[No. 20645.   In Bank. —September 10, 1890.]

## THE PEOPLE, RESPONDENT, *v.* AH OWN, APPELLANT.

CRIMINAL LAW — CONDUCTING GAME OF TAN — OPINION EVIDENCE. — Upon the trial of a defendant indicted for playing and conducting the game of tan as owner, the testimony of a police-officer who arrested the defendant, but did not see him conduct or engage in the game played, that he supposed that the defendant was the banker from the position he occupied at the table, and that if any one else had been occupying that place and sitting in that chair he would naturally suppose he was the banker, but that if he did not see the implements of the game he would not say that he was the banker, is evidence of the opinion of the witness upon facts which it was the province of the jury to pass upon, and its admission is an error importing injury to the defendant.

ID. — INSTRUCTION — AIDING AND ABETTING GAME. — Under an information making it incumbent on the prosecution to prove that the defendant played, carried on, opened or caused to be opened, and conducted as owner, a game of tan, an instruction to the jury that they should find the defendant guilty, if they found from the evidence, beyond a reasonable doubt that the defendant did deal, play, carry on, or cause a game of tan to be opened or conducted, either directly himself, or aided and abetted some other person in so doing, is not prejudicial to defendant, though obnoxious to unfavorable criticism.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*A. L. Hart,* for Appellant.

· *Attorney-General Johnson,* for Respondent.

SHARPSTEIN, J. — The information charges that "the said Ah Own, on the —— day of February, A. D. 1888, at the city of Sacramento, in the said state of California, and before the filing of this information, did then and there willfully, unlawfully, and feloniously play, carry on, open, cause to be opened, and conduct as owner, for gain, a certain banking game known as and by the name of 'tan,' said game being then and there played with certain devices, to wit, buttons, checks, and Chinese coin, and other money, and other representatives of value, contrary to the form, force, and effect of the statute in such case made and provided, and against the peace and dignity of the people of the state of California." Section 330 of the Penal Code reads as follows: "Every person who deals, plays, or carries on, opens, or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte, roulette, lansquenet, rouge et noire, rondo, tan, fan-tan, stud-horse poker, seven and a half, twenty-one, or any banking or percentage game played with cards, dice, or any device, for money, checks, credit, or any other representative of value, is punishable by fine of not less than two hundred nor more than one thousand dollars, and shall be imprisoned in the county jail until such fine and costs of prosecution are paid, such imprisonment not to exceed one year; and every person who plays or bets at or against any of said prohibited game or games is guilty of a misdemeanor." Under the information it was incumbent on the prosecution to prove that the defendant played, carried on, opened, or caused to be opened, and conducted as owner, a game of "tan." To prove that allegation, the prosecution placed upon the witness-stand the police-officer who arrested the defendant and made the complaint against him before the com-

mitting magistrate. The witness testified in substance that on the night of the 21st of February, 1888, he arrested the defendant; that on the night of the arrest, at about nine o'clock, he was passing along and noticed that the front door of the house in which the arrest was made was closed; that he walked around the house quickly; that there was a little counter in front where the Chinese have a little store; that he jumped over the counter and pushed himself into the room, where a game of "tan" was being played; that when he got into the room the Chinaman that was dealing dropped his stick, and with the players ran to the back end of the room; that the defendant occupied a chair which witness called the "banker's chair"; that the defendant was behind the table; that the witness reached and caught defendant and held him, and obtained some of the money that was on the table in front of him. The witness then gave a description of the game of "tan." On his cross-examination the witness testified in substance that at the time he went into the room he saw the game in operation; that one man had a stick in his hand pulling the buttons out; that the witness did not know who he was; that he did not see the defendant doing anything, but only saw him occupying the position which he had previously described; that he did not see the defendant conduct the game, nor did he see him take into his hand any instrument with which the game was conducted, nor did he see him take into his hand any of the money that was on the table or in the drawer.

The following cross-examination was thereupon conducted: "Question. Did you see him do anything towards playing the game of 'tan'? Answer. Well, my judgment was — Q. You need not state your judgment. I asked you the fact. Did you see him do anything towards conducting the game of 'tan,' or any other game? A. Well, about the position that he occupied — Q. I do not ask you about the position. I am asking

you about the fact, and I ask you to give an impartial statement of the fact without putting your judgment in. A. I have stated what I saw."

The last foregoing question was thereupon repeated to the witness, to which he answered "No." "Q. You saw him sitting there in a chair? A. Yes. Q. And that is all that you saw? A. And his moving and trying to get away."

The witness then gave a description of the room, of the persons in it, the surroundings, the instruments for playing the game, etc., and thereupon the judge asked the following question: "Could you tell from the position at the table whether he was the man who received and paid out the money?"

Counsel for defendant objected to the question as being irrelevant, and as involving an inference of the witness. The court overruled the objection, defendant excepted, and the witness answered: "Yes, he occupied the position of the man that paid the money." The witness on his further cross-examination stated, among other things, that he supposed that the defendant was the banker from the position he occupied, and that if there had been some other person in that room who was not interested in the game, and had been occupying that place, and had been sitting in that chair for a moment to rest, he, witness, would naturally have supposed that he was the banker, and would have prevented him from running a banking business under such circumstances.

And after some further statements of like import, the district attorney asked the following questions: "You stated that if you should go into the room where 'tan' had been carried on, and saw a man in that position, that you would say that he was the banker. Would you say that, if you did not see the implements of the game, the buttons, and the lead, and the money, and the stick, and the money in the drawer ready to pay off the debts, — would you say that, if you did not see them?"

Counsel for defendant objected to the question as being argumentative, and calling for an inference of the witness. The objection was overruled, defendant excepted, and the witness answered "No."

It is clear that the court, by overruling the objections to these two questions, admitted evidence of the opinion of the witness upon facts which were in evidence before the jury, and upon which the jury were as competent as the witness to form an opinion; and a jury should not be influenced by the opinion of any one not more competent to form one than themselves.

As a general rule, the opinion of witnesses is not admissible in evidence. They must speak to facts within their knowledge. "A witness can testify of those facts only which he knows of his own knowledge,—that is, which are derived from his own perceptions,—except in those few express cases in which his opinions, or inferences, or declarations of others, are admissible." (Code Civ. Proc., sec. 1845.) This case, obviously, is not within the exception to the general rule.

We think the court erred in overruling the objections to the questions which called for the opinion or inferences of the witness upon facts to which he had testified, and that it is an error of a character which imports injury to the appellant. (*Rice* v. *Heath,* 39 Cal. 609; *Spanagel* v. *Dellinger,* 38 Cal. 278; *Sweeney* v. *Reilly,* 42 Cal. 402; *Ponce* v. *McElvy,* 51 Cal. 222.) Among other instructions to the jury the court gave the following: "Every person who deals, plays, carries on, or causes to be opened, or who conducts any game of tan played with any device for money, checks, credits, or other representative of value, is guilty of a crime; and all persons concerned in the commission of a crime, whether it be a felony or misdemeanor, and whether they directly commit the act constituting the offense, or, being present, did aid and abet in its commission, are principals in such crime so committed. And if you find from

the evidence, beyond a reasonable doubt, that the defendant did deal, play, carry on, or cause to be opened or conducted, either directly himself, or aided and abetted some other person in dealing, playing, carrying on, or conducting, a game of tan with any device for money, checks, credits, or other representative of value, at the time and .place mentioned in the information, you should find a verdict of guilty; but otherwise you should acquit him. The word ' play ' as used in this instruction does not refer to such persons as play or bet at or against the game; that is, those who are on the outside betting or playing at the game." While this instruction is justly obnoxious to unfavorable criticism, we fail to see that appellant could be prejudiced by it. We purposely refrain from expressing any opinion as to the sufficiency of the evidence to justify the verdict of the jury, because a retrial must be had. Judgment and order reversed, and cause remanded for a new trial.

McFARLAND, J., WORKS, J., FOX, J., and PATERSON, J., concurred.