[Civ. No. 12968. Second Dist., Div. One. Nov. 22, 1941.]

ABE CHAPMAN, Appellant, v. LEO AGGELER, as Judge of Municipal Court, etc., et al., Respondents.

Clifford Thoms and Robert P. Dockeray for Appellant.

J. H. O'Connor, County Counsel, Ned Marr, Deputy County Counsel, Ray L. Chesebro, City Attorney, and W. Jos. McFarland, Assistant City Attorney, John L. Bland and Edwin F. Shinn, Deputies City Attorney, for Respondents.

DESMOND, J. *pro tem.*—According to appellant, "This is an appeal from a judgment against appellant, Abe Chapman, in a claim and delivery action for the recovery of approximately 214 vending machines taken from the possession of appellant by the Police Department of the City of Los Angeles on or about the 17th day of November, 1936. Said machines were taken from a private warehouse located at 400 South Boylston Street, Los Angeles, California; were the property of appellant, and at the time of their seizure were not in use and contained no money or merchandise.

"The judgment provides that appellant do not recover possession of said vending machines, nor any sum of money for their detention, and further provides: 'that all of the articles described in said Second Amended Complaint be broken up and destroyed by the defendant, Arthur C. Hohmann, Chief of Police of the City of Los Angeles, so completely as to render them incapable of use for gaming purposes, and file in this Court as a part of the record in this case satisfactory proof of such destruction.' "

We judge from respondents' brief that the only exception they take to the foregoing statement relates to the description of the machines in question as "vending machines." That term they consider in the highest degree euphemistic, contending that the machines are in fact gambling machines, properly in the custody of the police, awaiting execution of the death sentence imposed by the order of the trial judge.

The machines were seized by the police department (whether with or without a search warrant not appearing)

as potential evidence when the appellant was arrested and charged with violation of section 43.07 of the Los Angeles Municipal Code (Ordinance No. 77000 of the city of Los Angeles). This section reads as follows: "No person shall have in his possession any lottery device." A "Lottery device" is defined by section 43.00 of the Municipal Code as follows: "'Lottery device' shall mean any tool, brush, punch, stamp, die, cut, instrument or device used or understood or intended to be used to contrive, prepare, set up, propose, draw, print, stamp, mark, write or distribute any lottery or lottery ticket or by which the outcome, results or bets of any lottery or lottery drawing are prepared, drawn, printed, stamped, marked or written."

Upon his trial before the Honorable Leo Aggeler, Judge of the Municipal Court of the City of Los Angeles, the defendant, appellant here, was acquitted of the charge of violating section 43.07, but failed to secure an order, requested from the judge, for restoration of the personal property seized by the police department. Thereafter appellant brought this action in the Superior Court of Los Angeles County, seeking the return of said property. The adverse judgment there rendered, appellant asserts, constitutes an unlawful seizure and forfeiture of property, and he urges that it be reversed upon that ground. It is also claimed that the findings of fact and conclusions of law are not supported by the pleadings or by the evidence, and further, that the court was without jurisdiction to order the destruction of the property seized.

Among the various conclusions of law reached by the trial court is the following: "The possession of the articles described . . . is unlawful under the provisions of Sections 319, 320 and 330a of the Penal Code of the State of California." Section 319 defines a lottery in the following language:

"A lottery is any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share or any interest in such property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle,

or gift-enterprise, or by whatever name the same may be known."

Section 320 reads as follows: "*Punishment for drawing lottery.* Every person who contrives, prepares, sets up, proposes, or draws any lottery, is guilty of a misdemeanor."

We perceive nothing in either of these statutes that prohibits possession of slot machines or even of lottery devices. The net effect of the two is to prescribe punishment for the man who operates or draws a lottery, not for the man who owns or possesses a machine which may be operated as a lottery. ▬ Nor is there in section 330a any language that makes it a crime to possess a slot machine which may be operated as a lottery or as a gaming device. Reduced to its essentials, section 330a reads as follows: "Every person, who has in his possession or under his control . . . or who permits to be placed, maintained or kept, in any room . . . owned, leased or occupied by him . . . any slot or card machine, contrivance, appliance or mechanical device, upon the result of action of which money or other valuable thing *is* staked or hazarded, and which *is* operated, or played, by placing or depositing therein any coins, checks, slugs . . . or as a result of the operation of which any merchandise, money, representative or articles of value . . . is won or lost . . . when the result of action or operation of such machine . . . is dependent upon hazard or chance . . . is guilty of a misdemeanor. . . . " (Italics added.)

The offense here denounced is the possession of a slot machine which "is operated, or played," not which *may* be be operated or played. In this important particular our statute differs materially from section 982, Penal Laws, McKinney's Consol. Laws of New York, which the court, in *People* v. *Kay,* 38 Cal. App. (2d) Supp. 759 [102 Pac. (2d) 1110], at page 766, understood to be "substantially the same as Section 330a of the Penal Code." The difference is made clear by a reference to the opinion in *People* v. *Brown,* 151 Misc. 712 [273 N. Y. Supp. 560] (cited in the Kay case), where the court spoke of section 982 of the Penal Laws, *supra,* as follows: "This section applies to possession of slot machines, and makes it a misdemeanor to keep or maintain any machine into which *may be inserted* a piece of money or other object, and from which as a result *may be issued,* 'Any piece or pieces of money or any check or memorandum calling for

any money.' '' (Italics added.) It is noteworthy, too, that the court there relied upon proof that the slot machine was in fact actually operated as a gambling device. There is no California statute that prohibits, as does section 43.07 of the Los Angeles Municipal Code, the possession of a lottery device. Neither is the manufacture of slot machines within the state prohibited, as it is by section 982 of the Penal Code of New York, nor the sale of gambling implements or devices, as it is by section 970a of the same code. The fact that our lawmakers have seen fit not to legislate upon these subjects, which are altogether within their province, serves to remind the court that in passing upon laws relating to gambling nothing can be taken for granted. It is still lawful in this state to play certain card games for money or valuable stakes, and pari-mutuel gambling on horse-races by those in attendance has recently been made lawful by our lawmakers.

When legislators speak through statutes, their enactments must be given a strict interpretation. The law must be applied as it is written. It cannot be extended by judicial interpretation. The opinion in *Bakersfield etc. Co.* v. *J. K. McAlpine etc. Co.*, 26 Cal. App. (2d) 444 [79 Pac. (2d) 410], at page 448, points out that courts may not "indulge in mere speculation to the effect that the legislature meant something other or less than what it said. They may not depart from the literal construction of the statute unless they can be reasonably assured that the legislature meant to say something different from what it appears to have said." Observing the strictness with which the courts of California have uniformly applied the provisions of the law relative to gambling and gaming devices (see *Ex Parte Williams,* 7 Cal. Unrep. 301 [87 Pac. 565]; *In re Clark,* 54 Cal. App. 507 [202 Pac. 50]; *People* v. *Carroll,* 80 Cal. 153 [22 Pac. 129]), and noticing the omission from section 330a of important language which in other jurisdictions has been employed by legislative bodies, we cannot accept the reasoning of the court in the Kay case, *supra,* as controlling. In the Clark case cited above the court used this language (page 509), "In order to constitute an offense under section 330, it is essential that it be alleged and proved that the game, whether described under any of the names specifically given in the section, or under the general term of 'banking or percentage game,' shall have been played 'for money, checks,

credit, or other representative of value.' The purpose of the law is to prohibit games of the kind mentioned and described at which money or property, or the representative thereof, is lost or won. It cannot be assumed that it is impossible that any of the games specifically mentioned may not be played for amusement only and without the incident of money or property being wagered or bet thereat. The tenor of all the decisions that our attention has been referred to, or that we have been able to discover, indicates that this construction should be given to the statute. (*In re Capanna*, 45 Cal. App. 501 [187 Pac. 1077]; *People* v. *Sam Lung*, 70 Cal. 515 [11 Pac. 673]; *People* v. *Carroll*, 80 Cal. 153 [22 Pac. 129]; *People* v. *Ah Own*, 85 Cal. 580 [24 Pac. 780].)'' See, also, *People* v. *Babdaty*, 139 Cal. App. (Supp.) 791, 795 [30 Pac. (2d) 634]. ▇▇ Following the reasoning of the Clark case and the cited authorities, it is apparent that to sustain a conviction of violating section 330a, it is necessary to charge and to prove that the person accused was in possession or control of a machine or device which not only could be but actually was operated as a gaming device in the manner described in the statute. The full force of that decision as exemplifying the rule that statutes, and especially penal statutes, must be strictly considered and construed, strikes us when we consider that (quoting from the opinion), ''The complaint in the gaming case in its charging part declared as follows: 'Said defendant did then and there wilfully and unlawfully, open up and conduct a gambling game, to-wit, stud horse poker, in the town of Armona, County of Kings, State of California, in violation of Section 330 of the Penal Code of the State of California.' '' (*In re Clark, supra,* at page 508.) So insistent was the court that the words of the statute be adhered to literally, in charging an offense, that it refused to accept ''in violation of Section 330'' as a substitute for the express language of the section ''for money, checks, credit, or other representative of value,'' although one cannot read the section without realizing that the statute would not be violated unless the specified games were conducted for money, checks, credit or other representative of value. As may be observed in the closing words of the passage above quoted from the Clark case, and in the citation of authorities, the court was not adopting any new policy but on the contrary was following the law as recognized and estab-

lished in this state by a long line of decisions. This, of course, runs counter to the rationale of the Kay case, *supra*, where the court decided, in effect, that the clause (p. 763) "upon the result of the action of which money or other valuable thing *is staked*" was merely descriptive and therefore properly applicable even to a machine which never had been and might never be used for gambling. (Italics added.) In our judgment the clause in question, as well as other similar clauses in the statute employing the indicative mode of various verbs, instead of the potential mode, which might have been used had the legislature so intended, must be given an altogether different interpretation and effect than that adopted in the Kay case. We believe that the statute in its application requires no strained construction; that since it uses the indicative mode it should be so applied. That this is a correct conclusion appears more clearly when we transpose the clauses of section 330a, a permissible procedure, since the meaning is not changed, and also desirable as an aid to interpretation. With deletions indicated for the same purpose, we find the statute reads as follows: "Every person, who has in his possession or under his control . . . any slot or card machine, contrivance, appliance or mechanical device . . . and which is operated, or played, by placing or depositing therein any coins, checks, slugs, balls, or other articles or device . . . upon the result of action of which any money or other valuable thing is staked or hazarded . . . is guilty of a misdemeanor. . . . "

Instead of being descriptive, the clause above mentioned is in our opinion a limitation in fact and in law upon the scope of the section and literally determines what in our judgment is the sole purpose of the law, *viz.*, prohibition of gambling by such devices and not, as the Kay case holds, "the suppression of gambling devices" and the "absolute prohibition of any slot or card machine." That conclusion was based upon the reasoning of two cases cited by the court: *Bobel* v. *People*, 173 Ill. 19 [50 N. E. 322, 64 Am. St. Rep. 64], and *Hurvich* v. *State*, 230 Ala. 578 [162 So. 362]. Neither case is in our opinion of any assistance in interpreting section 330a of the Penal Code of California. The Alabama decision makes special reference to the statutes of that state which made comprehensive provision for the forfeiture and destruction of gambling devices. It does not appear that the statutes of

Alabama and California are similar, but, on the contrary, a substantial difference apparently exists.

The Illinois case we find particularly inapplicable, for in that case (and not in this), there was evidence admitted to prove that the slot machine "was in fact, at the time and place mentioned, used for gambling purposes." The defendant, Adam Bobel, upon that evidence was convicted of keeping a slot machine for gambling purposes. The contention on appeal had to do with the sufficiency of the indictment, the constitutionality of the act upon which it was based, and the admissibility of evidence. That portion of the opinion relied upon by the court in the Kay case is pure *dictum*, reading as follows: "We are of the opinion that it was the purpose of the legislature in enacting this statute, not only to suppress the use of these gambling devices, or the keeping of them for gambling purposes, but also to prohibit the ownership or the keeping of them . . . otherwise, why make it a criminal offense to own or keep them, without qualification as to the purpose of such ownership or keeping, and why provide for their seizure and destruction?" This is begging the question. It is not clear from the language of the Illinois statute under consideration that mere ownership was made an offense without qualification as to the purpose of such ownership. The Illinois court undertook to decide the issue by a rhetorical repetition of the very question involved, a process which to us is unconvincing and which is quite unnecessary when a statute under consideration can be given full effect by adhering to its language as written. In such a situation resort to speculation is worse than useless. The court, in *People* v. *Kay, supra,* expressed the opinion that unless section 330a is given the interpretation there applied it must be considered superfluous. ▪ Arguing that it is not, the statement is made at page 764 that "Section 330 of the Penal Code was ineffectual so far as the operation of a slot machine for anything other than money, checks, credits or other representative of value was concerned; likewise it did not prohibit the possession of these devices." Section 330a enumerates "merchandise, money, representative or articles of value, checks, or tokens" as the stakes prohibited in the operation of gambling devices, including slot machines. These items represent certain additions to the list set forth in section 330 and to that extent at least section 330a is not

superfluous. Nor can it be said to be superfluous when it makes unlawful the possession or control of a slot machine, naming it as such, when used as a gaming device. So applied it permits conviction of a guilty person and adds something to the law of California directed at the prohibition of gaming. But, as the courts have apprehended in the cases herein cited, even the games of chance mentioned in section 330 can be played lawfully for fun or for marbles; it is only when they are played for money or thing of value or representative thereof that they run afoul of the law. The same is true of roulette wheels and many other devices which can be purchased without secrecy or the slightest hindrance in department and toy stores throughout the state.

It must be equally true of slot machines, a fact which Judge Aggeler recognized when he found this appellant not guilty of possessing a lottery. He, apparently, did not believe that the purpose behind the adoption of the Los Angeles ordinance prohibiting possession of a lottery device, was suppression or prohibition of slot machines, but rather the suppression and prohibition of gaming by means of such machines. In our opinion any question as to the intended purpose and evident meaning of section 330a is finally and definitely resolved in favor of the view which we express by a reference to the title of the act: "An act to add a new section to the Penal Code of the State of California, to be numbered section 330a, *relating to gambling by the use of slot machines* or card dice, or other dice having more than six faces or bases each." (Statutes 1911, page 951.) (Italics added.)

Appellant calls attention to the fact that in the present case no evidence was adduced to prove that any of the machines seized by the police were ever used as gambling machines; that they were seized not while being operated as gambling devices, but while in his shop for storage or repair; and further that they could be used, according to the wish of the person holding possession, either for gambling or for vending merchandise. Certain attachments or mechanical devices made it possible to use the machines in either way. So far as the record discloses, appellant was in the business not of operating any of the machines but of renting them.

At the trial it appeared that on several occasions he had rented some of his machines to moving picture studios as "props"; also that he rented machines to individuals or firms other than studios. He did not undertake to exercise supervision or control over the operation of the machines after they left his hands.

The trial judge in paragraph VIII of his findings determined, "That the allegations contained in Paragraph III of defendant Hohmann's second answer and first affirmative defense are true; that said machines had been leased as 'props' in the making of moving pictures to moving picture studios by the plaintiff; that forty-five (45) of said machines were equipped with vending devices and one hundred and sixty-eight (168) of said machines were not so equipped; that said machines could be set so that they could be used for vending merchandise exclusively." The allegations of said paragraph III are as follows: "That at the time of the arrest of the said Abe Chapman, as aforesaid, the Police Department of the said City seized at said place a number of gaming devices and lottery devices, which said gaming devices and lottery devices are so constructed that upon the insertion of a coin in said machines a lever is released or unlocked. Upon pulling said lever and then releasing the same a package of mints, gum or other confection is automatically released from said machine, and, in addition thereto, cylinders in said machines are set in motion, said cylinders revolving independently of each other. In addition to the package of mints, gum or other confection which the operator of such machine receives, as aforesaid, the machine delivers at intervals certain metal slugs, chips or tokens in varying numbers, depending upon the chance action of said machine."

█ It will be seen that this paragraph describes the working of a slot machine when it is put in operation as a gaming device, but as we have stated, until or unless it is so used it is not proscribed by the law. Or, to put it another way, the machine, unloaded with coins or tokens, is no more a lottery under state law, sections 319 and 320, Penal Code, than it was found to be under the Los Angeles ordinance; that is, not at all. Unloaded and not in use as a gaming device, it is inoffensive also under section 330a.

█ This leads us to comment on the fact that the trial court in this action failed to make any finding on paragraphs

IV and V of the answer and affirmative defense, which we here reproduce:

"IV.

"That said machines are adapted for use and intended to be used for the purpose of distributing, for a consideration, property and things of value by lot or chance, in violation of the lottery laws of the State of California, and that the possession of such machines was at the time of the seizure thereof, at all times since has been and now is unlawful and constitutes a violation of the provisions of Section 43.07 of the Los Angeles Municipal Code. . . .

"V.

"That said machines are also slot machines, the operation of which is unlawful and in violation of Section 330a of the Penal Code of the State of California and the operation of said machines also constitutes a violation of Section 320 of the said Penal Code."

Of especial significance was the omission of any finding upon paragraph VIII of the answer and affirmative defense, reading as follows:

"VIII.

"That said machines and devices were constructed and adapted for use as gaming equipment for the purpose of distributing things of value by lot or chance to persons who pay for the privilege of operating said machines, and are not adapted for use for any beneficial purpose. The other articles seized at said time and place are capable of use only for the purpose of constructing or repairing machines adapted to the use aforesaid. That said machines, and the said parts thereof, are from their nature and the purpose for which adapted to use incapable of being used for any lawful or beneficial purpose and are not property the ownership of which will be protected by the courts of this state."

These omissions in themselves argue for the view which we take that error arose when the court found that appellant was not entitled to possession of the property seized, and entered judgment accordingly.

So far as that judgment relates to disposition of the machines, there are reasons furnished by the provisions of substantive law which cannot be ignored, and which convince us that the court, when it issued its order for destruc-

tion of the seized property, exceeded its authority. We first call attention to the fact that this appellant was convicted of no crime, and then cite the restrictive rule which obtains even when a defendant is found guilty. It is found in section 677 of the Penal Code providing that "No conviction of any person for crime works any forfeiture of any property, except in cases in which a forfeiture is expressly imposed by law. . . . " In all of chapter X of the Penal Code, which is entitled "Gaming", and where section 330a appears, there was, prior to this year, no provision for forfeiture. This can hardly be considered accidental since the preceding chapter dealing with lotteries contains a provision for forfeiture in section 325, an instance where forfeiture is "expressly imposed by law." But even there, in order to make forfeiture effective, an action must be brought or an information filed "by the attorney-general, or by any district attorney, in the name of the state." And by this procedure no lottery or gambling machine may be taken by the state, but only the "moneys and property offered for sale or distribution. . . . " It may be urged that destruction might be authorized by section 335a, effective September 13, 1941, giving courts the power, upon posting notices and pursuant to the procedure there provided, to order the destruction of machines or devices, "the *possession or control of which is penalized* by the laws of this State prohibiting lotteries or gambling. . . . " (Italics added.)

Examining the state laws relating to lotteries and gambling, we find none which penalize the possession of a lottery device as such. If it be contended that a slot machine constitutes a lottery device, it would be necessary, as we have indicated, in order to convict a person of unlawful possession or control, to prove that the machine in question was operated as a gambling machine, and in the instant case no such proof was offered or even attempted. The bare *possession or control* of slot machines is not penalized by section 330a, hence even the new section, if in effect, would be inapplicable in the circumstances here presented. In short, there is no statute in California that has been called to our attention or that we have been able to find that vests in the court authority to declare a forfeiture in a case such as we are considering. In the absence of express statutory authority, the order re-

quiring the destruction of the property in question is without legal sanction and void.

It follows from this that the portion of the judgment, by which the court ordered the seized property to be destroyed and a record entry made of its destruction, cannot be sustained.

Judgment reversed, without costs to either party, and the cause remanded with instructions that judgment be entered for plaintiff entitling him to the return, forthwith, of the seized property.

York, P. J., and Doran, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied January 19, 1942. Curtis, J., voted for a hearing.