[Civ. No. 14619. Second Dist., Div. One. Mar. 26, 1945.]

ATLAS FINANCE CORPORATION (a Corporation), Appellant, v. ROBERT W. KENNY, as Attorney General, etc., Respondent.

Wendell P. Hubbard for Appellant.

Robert W. Kenny, Attorney General, in pro. per., and Frank Richards, Deputy Attorney General, for Respondent.

WHITE, J.—This appeal comes before us on the judgment roll and is taken from a judgment of dismissal of an action brought by plaintiff to recover possession of equipment, usable

for gambling purposes (hereinafter referred to as "equipment"), following the sustaining without leave to amend of the demurrer of defendant to plaintiff's second amended complaint.

By such second amended complaint filed herein, plaintiff seeks to recover possession of said equipment, which, it is alleged, is usable for gambling purposes but was not being so used when, on or about December 29, 1939, it was seized on board the S. S. Mount Baker, a vessel or barge allegedly located at the time of said seizure upon the high seas outside of and beyond the boundary lines of the State of California, or to recover the value of such equipment so seized in the amount of $35,000 in the event possession cannot be had, together with damages in the sum of $2,500 for alleged illegal detention thereof.

The property seized is described in said complaint as follows:

2 Poker tables and chairs
110 Caille Bros. slot machines
6 Dice tables complete with layouts, racks, etc.
4 21 Tables and racks
1 Big Six Wheel
1 Table and layout for Big Six
2 Cages, dice layouts and tables
70 Stools
8 Roulette outfits, chips, etc., complete
Miscellaneous equipment and parts.

Defendant Robert W. Kenny, in his official capacity as Attorney General of the State of California, demurred to the second amended complaint (wherein all available facts as to waiver and estoppel were pleaded) on the grounds that the action was barred by the statute of limitations, that the statute was not waived, that defendant was not estopped from pleading the same, and that said second amended complaint failed to state facts sufficient to constitute a cause of action.

From the facts alleged in the second amended complaint it appears that, during the term of office of defendant's predecessor as Attorney General of the State of California, certain officers, deputies, investigators and employees of said office attempted to board the above mentioned vessel for the purpose of removing the aforesaid equipment; that the crew, acting

under instructions from plaintiff, refused to permit the representatives of the attorney general's office to board the vessel; that Warren Olney, as chief criminal deputy in the office of the attorney general, and Attorney Alford P. Olmstead, counsel for plaintiff, held a conference at which they discussed the legality and rightfulness of plaintiff's possession of said equipment; that Olney stated he was going to obtain a search warrant to board said vessel; that Attorney Olmstead stated he did not think a search warrant could legally be obtained because a bona fide affidavit could not be made that an offense was being committed on board the vessel, and that a sufficient affidavit could not therefore be made to sustain the issuance of a search warrant, but that if such warrant were obtained plaintiff would not question its validity and would permit the representatives of the attorney general's office to board said vessel and would surrender to them said equipment on condition that the same be stored in a public warehouse and kept in storage at plaintiff's expense until such time as the latter might have the legality and rightfulness of its possession of said equipment determined by a court action, and said equipment would not be destroyed or disposed of by the attorney general's office pending a final court decision; that said Olney agreed thereto and on the following day did obtain a search warrant from a judge of the Municipal Court of the City of Los Angeles, authorizing the Chief of Police of the City of Long Beach to search said vessel, but which warrant did not specifically describe nor direct that such search be made for any of the aforesaid equipment; that thereafter, on the 29th or 30th of December, 1939, said employees of the attorney general's office presented said search warrant and, in accordance with the aforesaid agreement and instructions given by plaintiff to its crew and in reliance upon said agreement, the representatives of the attorney general's office were permitted to board said vessel where, in further compliance with said agreement, the equipment was given and surrendered to the attorney general's office. That the same was removed by employees of the attorney general's office and stored with the Crescent Warehouse Company, Ltd. on Terminal Island, about January 2, 1940. In the second amended complaint it is then alleged that after the property was taken to the warehouse, it was agreed between Attorney Olmstead, representing plaintiff, and Chief Criminal Dep-

uty Attorney General Olney that the office of the attorney general should bill the plaintiff from time to time for the storage charges. It appears from certain exhibits attached to and made a part of the second amended complaint consisting of letters exchanged between Attorney Olmstead, representing plaintiff, and the then attorney general that the storage charges were paid by plaintiff up to January 1, 1943. In a letter from the office of the attorney general to Attorney Olmstead, under date of June 25, 1940, appears the following:

". . . The bills which we have paid total $86.02 and we would be obliged if you would remit this amount to us, in accordance with our understanding that these storage charges would be paid by your clients."

In the second amended complaint it is further alleged that said Chief Criminal Deputy Attorney General Olney assured plaintiff that so long as the latter paid the storage charges *"the said personal property should remain in storage intact and would not be destroyed and that plaintiff could bring suit at its own convenience and whenever it so desired"* (italics added); that the attorney general's office was uncertain of the correctness of its contention that the possession of said property by plaintiff was illegal and the aforesaid agreements were partly actuated by such uncertainty; that Olmstead and Olney discussed between them that "prior to the time that the legality or rightfulness of plaintiff's possession of the aforesaid personal property, another case might be decided by the courts of this state determinative of the question involved in connection with plaintiff's possession of the aforesaid personal property; that in fact, the case of *A. Chapman* v. *Judge Leo T. Aggeler* was then pending in the Superior Court of Los Angeles County involving the legality and rightfulness of the possession of similar equipment, particularly slot machines similar to those described as aforesaid."

It is then alleged that in the latter part of January, 1942, the case of *Chapman* v. *Aggeler,* 47 Cal.App.2d 848 [119 P.2d 204], was decided by the District Court of Appeal and a hearing was denied by the Supreme Court; that in said case the court held that mere possession of slot machines and other equipment similar to that involved in the case at bar was not illegal and directed the Police Department of the City of Los Angeles to return said equipment to the plaintiff;

that during the early part of February, 1942, Olmstead and Olney had a conversation wherein Olmstead claimed that the case of *Chapman* v. *Aggeler* was determinative of the legality and rightfulness of plaintiff's possession of the said gambling devices and equipment seized on board the Mount Baker and demanded the return thereof, and that Olney stated that he did not think the decision was determinative of the rightfulness and legality of plaintiff's possession of said personal property and refused to permit plaintiff to retake possession thereof; that in later conversations between Olmstead and Olney, had during the spring and summer of 1942, Olney in each of said conversations refused to permit plaintiff to retake possession of said personal property; that in summer and early fall of 1942 a discussion was had between Olmstead and Olney as to the filing of a suit by plaintiff and the county in which suit should be brought. It is then alleged that Olmstead and Olney discussed the political campaign for the governorship of California, which was then in progress and that Attorney Olmstead, representing plaintiff, stated he did not wish to institute a lawsuit in connection with the existent controversy until after the first of the year 1943 because of "possible political repercussions," and that Chief Criminal Deputy Attorney General Olney did not protest against this delay, make any objection thereto, or request that plaintiff bring suit, but that said Olney remained silent, and by such silence "appeared to acquiesce therein," and led Attorney Olmstead to believe that the attorney general's office was in accord with such further delay in the commencement of said legal action because of the aforesaid political campaign. It is further alleged that during said conversations the possibility was discussed that, if the defendant in the instant action who was then a candidate for attorney general should be elected, he might take the legal position that the case of *Chapman* v. *Aggeler, supra,* was determinative of the question involved in plaintiff's possession of said personal property and direct that said personal property be returned to plaintiff. By its second amended complaint plaintiff alleges that said agreements and conversations "lulled plaintiff into a sense of security" insofar as the statute of limitations was concerned; that the attorney general's office was apprised of all the facts and knew that plaintiff had not used any of said equipment illegally but had merely obtained possession thereof pursuant

to its mortgage thereon, and that the attorney general's office knew that plaintiff believed that as long as it paid the storage charges it would not be compelled to bring suit against the office of the attorney general.

It is further alleged "That the Attorney General's Office intended that its conduct be acted upon and its conduct was so acted upon as to lead the plaintiff to rely thereon and to refrain from bringing the above entitled suit at an earlier date; that in reliance upon said conduct and upon said agreement, plaintiff has paid out substantial sums of money for storage charges and neglected to bring this, the above entitled suit, verily and truly believing that it might bring a suit to determine the rightfulness and legality of the possession of the aforesaid equipment at any time; that the Attorney General's Office has never disputed said agreement and has never notified plaintiff that it was not bound further by the said agreement, and plaintiff by reason of such silence and conduct as hereinabove set forth on the part of the officers and agents of the Office of the Attorney General permitted more than three years to elapse from the time that the property was surrendered and delivered to the Office of the Attorney General before bringing the above entitled suit. That by reason of the foregoing facts, the statute of limitations has been waived by the Office of the Attorney General and said Attorney General's Office and said Robert W. Kenny, the Attorney General, is estopped thereby to plead and set up the defense of the statute of limitations; that if defendant is permitted to avail himself of the statute of limitations the same will be a fraud upon the plaintiff and will redound to plaintiff's injury and prejudice."

It is then alleged in the second amended complaint that plaintiff obtained title to the S. S. Mount Baker for the sum of $10,000 through a sale conducted by the United States Marshal and subsequently confirmed by a United States commissioner. With reference to the aforesaid equipment, plaintiff alleges that title thereto was obtained pursuant to the provisions of the mortgage held by plaintiff upon said equipment, which authorized a sale of the same at public auction after default; that such public auction was held in the city of Long Beach; and that, as the highest bidder, plaintiff purchased all the right, title and interest of the mortgagor, Mount

Baker Amusement Corporation, in and to the aforesaid equipment and personal property.

The second amended complaint then goes on to allege that the defendant herein Robert W. Kenny was elected to the office of Attorney General of the State of California and assumed such office on or about the first day of January, 1943, since which time he has been the duly elected, qualified and acting attorney general of the state. That subsequent to the induction of said defendant into the office of attorney general, plaintiff has demanded from him that the aforesaid equipment be restored to it, but that said defendant has neglected, failed and refused to restore possession of the same to the plaintiff, and that said defendant, in his official capacity, continues to retain and detain said personal property from plaintiff against the latter's will and consent; and that plaintiff is now the owner and entitled to the possession of said personal property.

Finally, by its second amended complaint, plaintiff alleges that it ''has never used said personal property or any portion thereof for the purpose of gambling or gaming, nor for the purpose of staking or hazarding or causing to be staked or hazarded any money or any other valuable thing upon the result of action of said personal property; that at the time plaintiff took possession of said personal property on the 4th day of October, 1939, neither the said personal property nor any portion thereof was being used nor has it since been used by the plaintiff or by anyone else for the purpose of gambling or gaming nor was at said time nor since said time has any money or other valuable thing been staked or hazarded or won or lost upon the action of any of said personal property but the same remained upon the said vessel Mount Baker and was stored and unused during possession of the plaintiff from the 4th day of October, 1939, until the same was surrendered and turned over to the agents and employees of the Office of the Attorney General, and removed from the vessel on the 2nd day of January, 1940.''

''That no stockholder of the plaintiff, Atlas Finance Corporation, ever owned, nor does he now own, any stock or any interest in the Mount Baker Amusement Corporation, and no stockholder of the Mount Baker Amusement Corporation ever owned, nor does any stockholder of said corporation now own any stock or interest in the Atlas Finance Corporation; that no officer of either company was ever or now is an officer

512

of the other company; that no connection or relationship whatever existed or exists between said two companies other than the relationship of debtor and creditor, or mortgagor and mortgagee as hereinabove set forth.''

As its first ground for reversal of the judgment, appellant urges that the demurrer should have been overruled because the allegations of the second amended complaint, the verity of which is admitted for the purposes of demurrer, show that plaintiff's possession of the equipment was legal and that plaintiff was therefore entitled to recover possession thereof from the defendant attorney general. The pleading specifically alleges that the promissory note, the ship's mortgage and the chattel mortgage were all executed aboard the S. S. Mount Baker on the high seas and outside the territorial limits of the United States. It must therefore be assumed when considering the demurrer herein that the chattel mortgage was valid and legal because of its execution at a place where there are no antigambling laws. Such chattel mortgage is just as legal as if it were executed in a state adjacent to California where there are no antigambling laws. Plaintiff having legally acquired possession and title to the equipment, the legality of the chattel mortgage or foreclosure proceedings under which plaintiff acquired title is not open to question. Furthermore, by its second amended complaint herein plaintiff is not seeking to enforce the provisions of the chattel mortgage nor is it asking the court to enforce what might be claimed to be an illegal contract.

Assuming for the purpose of passing upon the demurrer the legality of the contract by which plaintiff acquired title, we are brought to a consideration of the question whether because of the allegations of the second amended complaint that plaintiff had never used the equipment for gambling or unlawful purposes and that the same was not being used for any illegal purpose at the time possession thereof was taken by the attorney general, plaintiff is entitled to the possession of such equipment. The allegations of the second amended complaint bring this case squarely within the holding in *Chapman* v. *Aggeler*, 47 Cal.App.2d 848 [119 P.2d 204], that the only possession of a gambling device which is denounced by our statutes is the possession of one which ''is operated or played'' and not one ''which may be operated or played.'' The cited case is authority for the statement that the sole

purpose of the antigambling laws of this state is to prohibit the use of paraphernalia or devices for gambling games in which money or property, or the representative thereof, is won or lost, and not to absolutely prohibit the possession of any slot machines or card game equipment. In other words, one may legally possess equipment usable for gambling purposes if with it he plays games for amusement only and without the incident of money or property being wagered or bet upon the outcome of such games, or he may have such equipment in his possession for sale and transportation to a state or country where gambling is legal.

We are now confronted with the question whether plaintiff's action was barred by the statute of limitations (Code Civ. Proc., § 338, subd. 3). In this regard, it is appellant's contention that, since the property was surrendered to the attorney general's office pursuant to an agreement, the statute did not commence to run until three years after a demand was made upon the attorney general's office for the return of said property. The pleading with which we are here concerned definitely and unequivocally alleged that when certain officers and employees of the attorney general's office attempted to board the S. S. Mount Baker to seize the equipment in question and were thwarted by the refusal of the ship's crew to permit such boarding of the ship, that Warren Olney, then chief criminal deptuy in the office of the attorney general, conferred with the plaintiff's attorney; that the question was discussed between them as to the legality of the proposed action on the part of the attorney general. It was further alleged that at such conference plaintiff's attorney challenged the right of the attorney general to obtain a search warrant but agreed that should such a warrant be obtained plaintiff would not resist the same but would voluntarily surrender the equipment provided it was stored in a warehouse to await a decision by the courts in a pending case as to the validity of possession of equipment similar to that of plaintiff's and under like conditions. It is also alleged that a search warrant was obtained which did not refer to nor describe the equipment which is the subject of this action, but that, in accordance with plaintiff's agreement with the attorney general's office, the former surrendered to the latter the equipment here in question, which was stored in the warehouse and that plaintiff paid to the attorney general the

storage charges thereon. It is specifically alleged that "it was further agreed that the Attorney General's Office should bill the plaintiff from time to time for the storage charges incurred and said Warren Olney assured the plaintiff that so long as plaintiff paid said storage charges the said personal property should remain in storage intact and would not be destroyed and *that plaintiff could bring a suit at its own convenience and whenever it so desired*" (italics added). To us it seems clear that plaintiff and the office of the attorney general agreed that the taking of the equipment would be pursuant to an agreement that it would be preserved at plaintiff's expense until the legality of plaintiff's possession might be determined in the case of *Chapman* v. *Aggeler, supra,* then pending in the courts of this state and in which case the contentions of plaintiff were the same as the claims of plaintiff herein concerning the legality of the possession of similar equipment; and that plaintiff herein might "bring a suit at its own convenience and whenever it so desired." There was nothing tortious or illegal about the taking of the property with which we are here concerned, but such taking was with the consent of plaintiff pursuant to an agreement with defendant's predecessor in office. Therefore, the statute pleaded by defendant began to run from the time of demand and refusal to return (5 Cal.Jur. 172 and cases therein cited; *San Francisco Credit Clearing House* v. *Wells,* 196 Cal. 701 [239 P. 319]; *Webster* v. *Mountain Monarch Gold Mining Co.,* 6 Cal.App.2d 450 [44 P.2d 646]). The second amended complaint alleged that a demand was made upon the defendant's predecessor in the office of attorney general during February, 1942, and upon defendant herein during the year 1943; both demands being made within less than three years prior to the commencement of the instant action. This action was therefore not barred by the statute of limitations.

Insofar as the search warrant is concerned, it is at once apparent from the allegations of the second amended complaint with reference thereto that the same was irregular on its face and void insofar as seizure thereunder of this equipment was concerned because, according to the allegations of the second amended complaint, the search warrant failed to particularly describe the property to be taken (Pen. Code, § 1525). And the search warrant was directed to the Chief of Police of the City of Long Beach and not to the

attorney general. The latter therefore was not authorized to serve it except in aid of the officer to whom it was directed (Pen. Code, § 1530). In any event, it is clear from the second amended complaint that the equipment was not surrendered pursuant to the search warrant but in accordance with the aforesaid agreement between plaintiff and the office of the attorney general. Furthermore, it was surrendered to the latter and not to anyone mentioned in the directions contained in the search warrant.

 We are also persuaded that appellant must be sustained in its claim that the bar of the statute of limitations was waived by the office of the attorney general. We are in accord with respondent's contention that statutes of limitation are no longer regarded as a technical means of avoiding a just obligation but are viewed favorably as affording repose and security from stale demands upon one who may have lost the ability to procure evidence; that such statutes are vital to the welfare of society and have become rules of property. The statute will, when pleaded, be enforced in all cases which come within its operation and strained constructions will not be resorted to in an effort to relieve a party from its operation. But a statute limiting the time within which actions shall be brought is for the benefit and repose of individuals, and not to secure general objects of policy or morals. Its protection may, therefore, be waived in legal form, by those who are entitled to it; and such waiver, when acted upon, becomes an estoppel to plead the statute. To us, this seems a fair statement of the law. According to the averments contained in the second amended complaint, the attorney general agreed that, as long as plaintiff paid the storage charges on the equipment, plaintiff could bring a suit ''at its own convenience and whenever it so desired.'' When this agreement was made the attorney general knew of its terms and was also aware that contained therein were provisions which might postpone beyond the statutory period the time when plaintiff would commence an action to determine the legality of its possession of the equipment. From the allegations of the second amended complaint, it is apparent that there was in the minds of both parties a question as to the possession of the equipment by plaintiff under the circumstances pleaded being lawful. Plaintiff wanted additional time to await a decision by the courts in pending

litigation of a character similar to that contemplated by it. The attorney general was privileged at any time to advise the plaintiff that he would no longer abide by the agreement, rescind the same, and demand that plaintiff institute legal proceedings to determine the legality of its possession of the equipment, but instead of taking such course the attorney general chose to abide by the agreement and to demand of and to receive from plaintiff storage charges upon the equipment up to January 1, 1943. As we read the allegations of the second amended complaint, a fair construction of the provisions of the agreement that plaintiff "could bring a suit at its own convenience and whenever it so desired" would be that the same is tantamount to a waiver of the statute of limitations. In other words, the practical effect of the agreement between the parties herein was that the attorney general said to the plaintiff: "In view of pending litigation, upon the outcome of which the legality of your possession of the equipment in question may be determined, if you will deliver the equipment to me, I will store the same in a warehouse if you pay the storage charges thereon, and so long as you do so, and pending the outcome of the aforesaid litigation, you may bring legal action to determine your rights to possession of the equipment 'at your own convenience and whenever you so desire'." Therefore, under the provisions of the agreement pleaded herein, it must be held that the statute of limitations commenced to run only when the parties to the aforesaid agreement, or one of them, ceased to act upon it, which was well within three years prior to the commencement of the instant proceeding.

The respondent herein urges the bar of section 360 of the Code of Civil Procedure relative to the time of commencing civil actions. We do not think that the cited section is controlling here because the courts hold, for instance, that a provision for renewal contained within an instrument is a valid provision (*Morehouse* v. *Allen,* 213 Cal. 1 [300 P. 961]). By the same token, a provision in an agreement waiving the statute of limitations is a valid provision and necessarily implies the courts' willingness to enforce the same. To give effect to every valid provision of a contract or agreement not unlawful or against public policy is the general policy of the law. It is well settled law in this jurisdiction that the statute of limitations may be waived, and little, if any, doubt is left

that it may be waived by a provision in the agreement itself. Furthermore, it is not necessary in all cases that the waiver of the statute of limitations be in writing, because the conduct or even the silence of a party under some circumstances may create an equitable estoppel which would deprive him of his right to plead the statute as a bar (*Calistoga National Bank* v. *Calistoga Vineyard Co.*, 7 Cal.App.2d 65, 73 [46 P.2d 246]).

For the foregoing reasons, the judgment is reversed and the cause remanded with directions to the court below to overrule the demurrer to the second amended complaint, and to allow the defendant a reasonable time within which to file an answer thereto.

York, P. J., and Doran, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 24, 1945. Shenk, J., voted for a hearing.