## TERRITORY OF HAWAII *v.* GUILLERMO BOLLIANDAY, FERNANDO A. CALIBUYOT AND ALBERT MACALMA.

### NO. 2905.

ARGUED NOVEMBER 6, 1952.          DECIDED NFVEMBER 19, 1952.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY STAINBACK, J.

The defendants-plaintiffs in error, Guillermo Bollianday, Fernando A. Calibuyot and Albert Macalma, were each charged upon an information for the crime of participating in a gambling game, contrary to the provisions of section 11343, Revised Laws of Hawaii 1945. There were two counts in the information. The defendants were arraigned on both counts and were tried March 27, 1952, jury waived. All three of the defendants took the stand and denied gambling with the complaining witness at any time. The court found all three defendants guilty of gambling as set forth in the second count only, the second count being that the defendants participated in a gambling game known as "monte" at 3837 Claudine avenue in Honolulu on or about September 27, 1951.

It appears that the usual "come on" gambling scheme was followed by the defendants to get one Charles Tetsuichi Jitchaku, the complaining witness, into a gambling game. The defendants Bollianday, a former acquaintance of Jitchaku, and Macalma went to the home of Jitchaku,

a pig raiser, for the alleged purpose of buying some pigs. Jitchaku promised to sell them the pigs and they left. Several days later Bollianday and Macalma again called on Jitchaku at his place of work and asked him to meet them after work so they could take him to the person who would pay him for the pigs they had ordered. Jitchaku agreed to meet them for that purpose and that afternoon all three went to Alexander street in this city. Shortly after reaching the Alexander street place the defendant Calibuyot appeared on the scene, stating that he owed some money to a person residing there and took out a package of money which purportedly contained $8,000; Calibuyot went into the store to obtain some change. When Calibuyot left, Bollianday suggested that they gamble with Calibuyot for the purpose of obtaining the money in the package. Following this, the complaining witness told at some length of the game of "monte" played in his automobile by the defendants and himself in which Calibuyot finally lost to the others but refused to turn over the contents of the package he held unless they could "match" the $8,000 which he had in the parcel. Bollianday then produced a check for $7,000 and turned it over to Calibuyot who accepted it but still demanded more money before he would turn the package over to the winners. Jitchaku agreed to turn over his bank book and money to Calibuyot. The next day Bollianday went to Jitchaku's home and informed him that they could now go down and get the money they had won. They drove down and picked up Macalma and all went to Waialae avenue where they discussed the possibility of raising the money to cover the $8,000 contained in Calibuyot's package. Jitchaku agreed to draw money out of the bank if Bollianday would give him $250 more for doing so. This was agreed upon. Jitchaku went to the Bank of Hawaii and while the others waited outside he withdrew the sum of $600 from his

account. All the defendants and Jitchaku then drove to a garage at 3837 Claudine avenue and entered the garage; it contained a bed and a blanket was hanging down like a curtain.

Jitchaku was given the impression by Bollianday that he, Bollianday, and Macalma were "taking" Calibuyot in a "rigged" game. As they were about to enter the garage, Bollianday asked Calibuyot to wait outside while he, Jitchaku and Macalma went inside where Bollianday demanded to see Jitchaku's money. After he was shown the money, Bollianday had Macalma "stay outside and watch" while he, Calibuyot and Jitchaku commenced gambling on the bed in the garage in a game which the complaining witness described as "monte."

In a description of what transpired it appears that Bollianday dealt the cards and the five of spades and the queen of hearts came up; Calibuyot said he would "go" on the queen, Jitchaku said "okay" that he would put his money on the five of spades; that though the five came before the queen, before he had a chance to take the money, the defendant Calibuyot said "you lose" and picked up the money. Jitchaku asked why had he lost because his card came before Calibuyot's, and he was supposed to win. However, Bollianday interfered and persuaded him to play again. They then called the watchman, Macalma, from outside. Bollianday and Jitchaku went outside and Bollianday told Jitchaku he had the cards all set and "you deal the cards." Jitchaku did deal the cards and lost again.

Counsel for the defense claims there is no evidence that Macalma at any time engaged as a participant in the gambling that was going on in the garage on Claudine avenue. The Territory contends that Macalma, because of his role as a watchman, his proximity to and knowledge of what was going on behind the blanketed area of the garage at the time of the game, was guilty of participating

in the gambling game; that the role he played made it possible for the other gamblers to carry on and work without interruption or detection by anyone from the outside, and that as watchman he was aiding, abetting and encouraging the others in the commission of an offense against the Territory.

Acting as a watchman under our statute would class him as a principal. The statute (R. L. H. 1945, § 10670) is as follows: "All who take part in the commission of any offense, or, being present, aid, incite, countenance or encourage others in the commission thereof, shall be deemed principals therein."

Also, section 10673, Revised Laws of Hawaii 1945, provides for the trial and punishment of aiders and abetters or accessories before the fact just as though they were actually present and taking part in the commission of the offense. It states: "Every person who aids in the commission of an offense, or is accessory before the fact thereto, is guilty of such offense, and shall be subject to indictment, trial and punishment therefor, in the same manner and to the same effect as if he had been present at the commission thereof and actually taken part therein."

It will be noted that the offense with which the defendants are charged is a misdemeanor under our laws. As stated in Wharton, *Criminal Law* (12th ed., Ruppenthal 1932) volume 1, section 261: "At common law, in misdemeanors, there are no accessories, all concerned, whether instigators or perpetrators, being principals, subject to be indicted as such. * * *"

The rule applies whether the misdemeanors are at common law or statutory. (*State* v. *Lee,* 228 Mo. 480, 128 S. W. 987.)

In the Texas case of *Earp* v. *State,* 13 S. W. 888, the facts are similar to those in the present case. The evidence showed that the appellant did not engage in actual playing

but kept watch for the players to keep them from being caught.

There are many other cases along the same line. (27 C. J., Gaming, § 182, p. 1016; *Atkins* v. *State,* 95 Tenn. 474, 32 S. W. 391; *People* v. *Ah Own,* 85 Cal. 580, 24 Pac. 780; *State* v. *Scott,* 80 Conn. 317, 68 Atl. 258.)

Further, defendant Macalma contends that there is not sufficient evidence that he did act as a watchman; that though he went outside after he was told to do so and to watch, he may have gone for a stroll or visited a neighbor, etc. However, the record is replete with evidence that he was one of those scheming to defraud the complaining witness by means of the gambling game; that he was very active in getting the complaining witness into the game; that he was immediately outside the blanket when called in after the first hand was played; that he stayed inside when Bollianday and Jitchaku went outside and Bollianday assured Jitchaku that he had the cards all set, all prepared to win on his deal if Jitchaku would deal the cards, etc. We think the evidence fully warrants the inference that he did watch as he was told and agreed to do and that he did participate in the gambling scheme.

Defendants also contend that the court erred in finding them guilty of gambling under section 11343, Revised Laws of Hawaii 1945, because the prosecution failed to prove that "money or anything of value" was "lost or won" in a gambling game. They claim that the evidence produced at the trial shows the money was snatched up from the table from the grasp of the complaining witness, Jitchaku, who claims that under the rules of the game he won and was supposed to take the money; they argue that under these circumstances the prosecution failed to make out a case of gambling because no money was won or lost but that the crime committed was larceny of the victim's money, and not gambling.

As pointed out, the five card came up first but Calibuyot claimed he won. Perhaps these particular gamblers had adopted a local "ground rule" so to speak, and the first man's card that came up lost instead of winning, something like low hand wins at poker or deuces may beat kings when deuces are wild, or some other variation of the accepted rules.

However, regardless of whether Calibuyot was attempting to cheat the complaining witness by violating the rules of the game, or otherwise, the evidence shows that they did play for money not only once but a second time when the complaining witness himself dealt the cards and again lost. His losses in this game, as testified to by him, came to $300, so obviously something was won or lost on the gambling game which the complaining witness called "monte." We do not know the exact amount of money that Jitchaku put on the first card, nor how much on the second. We do know that he had $600 and that Bollianday promised to return to him the $300 he lost on "monte" but that he did not do so.

The mere fact that there was a dispute as to who won the money under the rules of the game or that the game was crookedly played does not excuse the defendants or mitigate their offense. (*Territory* v. *Tsutsui*, 39 Haw. 287, 289.) Obviously the defendants conspired to take Jitchaku's money and the gambling game was the method employed to fleece him.

Affirmed.

*R. S. Inouye* (also on the briefs) for plaintiff in error.

*G. F. St. Sure*, Assistant Public Prosecutor (also on the brief), for defendant in error.