# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

---

(No. 10971.—Appellate Court reversed; Circuit Court affirmed.)
THOMAS KEARNEY et al. Plaintiffs in Error, vs. CHARLES WEBB, Defendant in Error.

*Opinion filed April 19, 1917.*

1. GAMING—*when recipients of money to be used in gaming do not take title.* Where the owner of a gaming house hires three men to manage the gambling tables, as employees, with no interest in the business or its profits, and delivers to them three sacks of money to be kept in bulk and used only for the purpose of conducting a crap game, such employees take no title to the money.

2. SAME—*money in hands of a third person in pursuance of an illegal contract may be recovered by the owner.* Money delivered to a third person in pursuance of an illegal contract or under direction to use it for gaming purposes may be recovered by the owner in an action for money had and received if he repudiates the contract before the money is paid over according to the illegal agreement, and if a stakeholder pays the money to the winner of the bet after demand upon him by the owner he does so at his peril.

3. SAME—*party to an illegal contract cannot recover profits derived thereby.* A party to a gaming contract or to any illegal contract cannot recover profits or gains made in the carrying out of such illegal contract or recover in any way directly upon the illegal contract against the other party, whether agent or not.

278 — 2

4. SAME—*party cannot rely upon an illegal contract as a defense to a suit to recover money.* One who is in possession of a sum of money without the right thereto cannot rely upon an illegal contract as a defense to an action of assumpsit against him by the rightful owner for its recovery.

5. SAME—*courts will not deny recovery simply because a party has been a violator of law.* Courts will not deny a recovery to a party simply because he has been a violator of the law if he can show his right to such recovery without reference to any illegal contract and without causing the court to recognize or sanction any illegal conduct on his part.

6. SAME—*State's attorney liable in assumpsit for money taken in raid on gambling house.* A State's attorney who has made a raid on a gambling house and taken several bags of money to be used in conducting a crap game, which money was in the possession of employees hired to run the game, is liable for such money, after all prosecutions have been concluded and the fines paid, in a suit in assumpsit by the owner of the money and manager of the gaming house.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding.

C. E. CHAMBERLIN, AUGUST BARTHEL, J. A. FARMER, and LOUIS KLINGEL, for plaintiffs in error.

DAN McGLYNN, and T. M. WEBB, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Thomas Kearney and Henry Becker, plaintiffs in error, sued defendant in error in *assumpsit* in the circuit court of St. Clair county. The declaration consists of the common counts, only, with this bill of particulars: "This suit is brought to recover from the defendant the sum of, to-wit, $2000, with lawful interest from the 18th day of January, A. D. 1913, to date, which said sum is the property of the plaintiffs, and which defendant took from the possession

of the plaintiffs or their agents on, to-wit, the 18th day of January, A. D. 1913, in a certain building known as 126 West Broadway, in the city of East St. Louis, and which said sum the defendant has since said date wrongfully and unlawfully withheld from the plaintiffs and still unlawfully withholds, and has refused and still refuses to return same to the plaintiffs although requested so to do." Defendant in error pleaded *non assumpsit.* At the close of plaintiffs in error's evidence, and again at the close of all of the evidence, defendant in error moved the court to instruct the jury to find a verdict in his favor, but the court refused so to do. Plaintiffs in error then asked the court to direct a verdict for them in the sum of $1536.75, which the court did, and entered judgment accordingly. On appeal to the Appellate Court for the Fourth District the judgment of the circuit court was reversed and the cause was remanded, but on re-consideration the Appellate Court changed its order and reversed the judgment without remanding. The cause has been brought to this court for review by *certiorari.*

The trial court having given judgment on a directed verdict, the facts to be considered by us must be those most favorable to defendant in error. Those facts, as recited by the Appellate Court, are, briefly, that plaintiffs in error on and prior to January 18, 1913, conducted a gaming house in the basement of the building at said number in East St. Louis, in violation of the statutes of this State. For that purpose there were in said room a large and a small gaming table, at which was played the game called "craps." Plaintiffs in error had employed John Schneider, John Maguire and a man by the name of Rosenberg, who had charge of and operated the gaming tables. On said date plaintiffs in error gave to their said employees $1600 in silver, contained in three sacks, to be used by them "to bank the crap game." Maguire and Schneider stationed themselves at each end of the large table with $600, each, of the money,

and Rosenberg had $400 of the silver at the small table, and those parties conducted the game at their several stations. They began the games that afternoon and continued them for more than an hour. One hundred persons or more were crowded around and betting at the tables, the bets running from twenty-five cents to $4. At about four o'clock P. M. said employees had lost about $60 of the money so furnished them by plaintiffs in error. About that time a raid was made on the gaming house by police officers under the direction of defendant in error, as the State's attorney of said county, and the tables and other paraphernalia used by the employees in conducting the game, and the money that had been furnished them therefor, or what remained of it, were seized by the officers. The money was delivered in said sacks to the State's attorney, who counted it and found it to amount to $1536.75. He took charge of the money and has refused to return it at all times on demand of plaintiffs in error, who had paid their fines and made demand for the money after all intended prosecutions for violations of the statute for gaming and keeping gaming houses at said place had been concluded.

It is argued by defendant in error that when plaintiffs in error turned the money in question over to their employees to run the games they parted with all title and right to the money and that it became the money of the gamekeepers; that they could neither sue for and recover it from said employees after such delivery by any legal or equitable proceedings nor maintain any action at law or equity against defendant in error, who took the money, not from plaintiffs in error but from their said employees. Defendant in error's position cannot be sustained under the law and the facts. When plaintiffs in error delivered the three sacks of silver to their said employees and put them in charge of the room and the gambling tables and other paraphernalia in use for the said business, with directions to conduct or manage the gambling room and the games to be conducted there,

the agents did not take title to the money, the room, the tables or any of the other paraphernalia to be used in connection with the gaming to be there conducted. The silver money in the sacks was just as much a necessity to conduct the gaming to be done there as were the tables and other paraphernalia. The money was delivered to them in bulk, in sacks, and was kept in bulk, unmixed with the money of the employees and for the purpose of conducting a crap game, and for no other purpose. They had no right or authority to use it for any other purpose. The tables and other paraphernalia were placed under their charge for the same purpose. They took the same right and title to the money that they did to the other personal property there,— nothing more, nothing less,—the right to possess and use it for the business which they had been employed to manage and control. They had no interest in the business in which they were employed or in the profits thereof. They shared no profits or losses, and there were no profits or gains on that day. They were simply paid employees. The money taken by the officers was a part and parcel of the money so delivered to said employees. The very moment those employees should have undertaken to divert the money placed in their hands for use in that gambling to other uses or purposes or to appropriate it to their own personal use, a right of action, on demand, would have accrued to plaintiffs in error against such employees for money had and received. *Morgan* v. *Groff,* 4 Barb. 524; *Klock* v. *Brown,* 34 Ann. Cas. (Mich.) 48, and cases cited in note.

Plaintiffs in error also had the legal right to repudiate the illegal contract or direction to their employees to use the money for gambling if done before it had been used for the illegal purpose, and to maintain a suit directly against the agents for money had and received in case they refused to return the money on demand. (*Tyler* v. *Carlisle,* 9 Atl. Rep. (Me.) 356; *Clarke, Harrison & Co.* v. *Brown,* 4 Am. St. Rep. [Ga.] 98.) It is a well established rule of law

that where a party delivers money to another party to bet for him upon an election or a horse race or other such event, and his agent makes the bet for him and deposits the money with the stakeholder, or where the party himself makes such a bet and deposits his money with a stakeholder, he may retract his illegal act, and, on demand of the stakeholder at any time before the money is delivered to the other party, recover from the stakeholder the amount so deposited on the common counts for money had and received. Permitting recovery in such a case is not a recognition or sanction of the illegal contract. It is simply a recognition by the courts of the party's right to repudiate, and to refrain from further recognition of, the illegal contract. The stakeholder in such a case, after demand made upon him for the money, pays the money to the other party, although the winner of the bet, at his peril. *Hardy* v. *Hunt,* 70 Am. Dec. (Cal.) 787; *Pabst Brewing Co.* v. *Liston,* 83 N. W. Rep. (Minn.) 448; *McLennan* v. *Whiddon,* 48 S. E. Rep. (Ga.) 201; *Stevens* v. *Sharp,* 26 Ill. 404.

It is a well established rule of law that a party to a gaming contract or to any illegal contract cannot recover profits or gains made in the carrying out of such illegal contract or recover in any way directly upon the illegal contract against the other party, whether agent or not. The reason for the rule is, that to allow such a recovery the court would be lending its aid and sanction to such illegal contract. Where any party seeks a recovery on such a contract by suing directly thereon or brings an action of account against the other party to the illegal contract to recover for his money and profits embarked and gained in the carrying out of such illegal contract, courts of law and equity will refuse to aid either party in such recovery because they are both equally culpable, and the courts will leave them where it finds them without giving aid to either party. In such cases the parties rely on the illegal contract for recovery, and in such cases, only, are they said to be *in pari delicto.* The cases of

*Bishop* v. *American Preservers' Co.* 157 Ill. 284, and *Shaff-*
*ner* v. *Pinchback,* 133 id. 410, relied on by defendant in er-
ror, belong to that class.

The Appellate Court erred in holding that the plaintiffs
in error are prohibited by law from having the aid of the
courts to restore to them their money in this case. They
proved their title to the money without relying on the illegal
contract in question,—*i. e.,* they made out completely under
their declaration, without even a reference to the illegal con-
tract, their *prima facie* case. They used two of their said
employees as their witnesses, and there is no claim to the
money in question by anyone except the plaintiffs in error.
It was the defendant in error himself who introduced the
proof of the illegal contract and relied thereon for his de-
fense. He cannot be permitted to rely on the illegal contract
for a defense. *Clarke, Harrison & Co.* v. *Brown, supra.*

It is also insisted by defendant in error that the action
in assumpsit for money had and received is in its nature an
equitable action, and that it is contrary to the principles of
equity to permit plaintiffs in error to recover under the facts
in this case. It is true that such action is equitable in its
nature, and that a plaintiff in such action can only recover
where the defendant has money of the plaintiff which in
equity and good conscience he ought not to withhold from
the plaintiff. The facts here show just such a case. In de-
termining the equities in such a case the respective rights of
the parties in the suit to the money are only to be consid-
ered. If the money is found to belong to the plaintiff and
the defendant shows no right thereto whatever, courts will
not go back to inquire by what unconscionable or illegal
methods the plaintiff obtained it or to what illegal purposes
he had in other transactions employed the use of it. The
subject of recovery in this case,—money,—is not of the ob-
noxious class of property which the law condemns but is of
the harmless and moral class that cannot be condemned or
destroyed by the State under any statute. (*Glennon* v. *Brit-*

*ton,* 155 Ill. 232.) The money can serve the State, as evidence or otherwise, in no suit pending or contemplated, as the evidence clearly shows that there is no further suit contemplated in the way of criminal prosecutions and none pending that grew out of the transactions at said gambling house. Defendant in error has no right to the money or to the possession of it, and does not claim to have, in his official capacity or otherwise. No one of the employees of plaintiffs in error from whose manual possession the money was taken makes any claim to the money in question. Defendant in error cannot legally make it for them, as he does not represent them or claim to represent them. When the evidence in the case is properly limited to the legitimate issues, it will be seen that the proof will simply show that the plaintiffs in error have proved their title to the money and that defendant in error has proven no right or title thereto and does not even claim any right or title to the money. Under such a showing, how can it be said that the legitimate evidence shows that plaintiffs in error are not equitably entitled to receive the money or that defendant in error is not in equity and in good conscience bound to return the same to them? When the evidence in the case is properly restricted plaintiffs in error will not be shown to claim the money or the right to recover it through any illegal contract, as no evidence thereof in such case will appear in the record. The court, therefore, cannot properly be said to be recognizing or sanctioning any illegal contract or action by permitting a recovery by plaintiffs in error. No court of law or equity has ever denied a recovery to a party simply because he has been a violator of the law, if he can show his right to such recovery without reference to any illegal contract and without causing the court to recognize or sanction any illegal conduct on his part. There is absolutely no reason, therefore, for saying that an action in *assumpsit* for money had and received cannot be maintained for the money in question by plaintiffs in error. The action was in every

way appropriate.  *Highway Comrs.* v. *City of Bloomington*, 253 Ill. 164.

For the reasons aforesaid the judgment of the Appellate Court is reversed and the judgment of the circuit court is affirmed.

*Judgment of Appellate Court reversed.*
*Judgment of circuit court affirmed.*