(No. 6911. September 26, 1941)

STATE, Appellant, v. JAMES E. McNICHOLS, Respondent.

(117 Pac. (2d) 468)

Rehearing denied October 13, 1941.

Bert H. Miller, Attorney General, C. M. Jeffery, Prosecuting Attorney, Bannock County, Idaho, and Carl C. Christensen, for Appellant.

B. W. Davis, for Respondent.

BUDGE, C.J.—Respondent was charged and convicted of the crime of "willfully, unlawfully and knowingly

permit [permitting] to be played and conducted in a house owned by him, the said James E. McNichols, to-wit: a place known as the Shamrock Club, a game of chance, to-wit: cards, dice, slot machines and roulette, for money, checks and credit * * * ." The devices were duly seized under a search warrant and thereafter and subsequent to respondent's conviction, were, by the District Court, ordered destroyed under the provisions of Section 17-2304 I. C. A. The money found in the devices after seizure, was deposited with the county treasurer by the sheriff. This cause was previously before this Court upon a motion to dismiss the appeal and will be found reported in 62 Idaho 616, 115 P. 2d 104, to which reference may be had for a more complete statement of the facts.

Respondent McNichols was convicted in the Probate Court of the offense above charged. Judgment was imposed, from which he appealed to the District Court. The cause coming on for hearing, he moved to dismiss the appeal, which motion was granted, whereupon he filed a motion in said court, that an order be made for the return to him of the money found in the gambling devices, which motion was duly granted and an order entered to that effect, from which order this appeal is prosecuted.

There is but one question here for determination, namely, did the trial court err in making and entering its order directing that the money found in the gambling devices be returned to respondent.

Appellant contends that the money found in the gambling devices constituted an integral and necessary part of such devices and that respondent was not entitled to have the same returned to him for the reason that the money found in the gambling devices was subject to seizure and confiscation as a component part of the apparatus or instrumentality used in the illegal gambling operation.

While, upon the other hand, respondent contends that the money in question was his property; that it was in the custody of the Court to be used as evidence in the cause; that, upon a dismissal thereof, being no longer

necessary for that purpose, he was entitled to have the same returned to him.

■ Under the great weight of authority money deposited in gambling devices is clearly such an integral part of such devices as to become an integral part thereof; and such devices cannot be carried away without taking the money therein.

In *Dorrell v. Clark,* (Mont.) 4 P. 2d 712, the Court uses the following language which is applicable to the facts in the instant case:

"It is first apparent that the sheriff did not wrongfully seize the money in question. The statute authorized him to seize the slot machines in operation. It is clear from the record and from the nature of the devices seized that the money was within the mechanism of the slot machines and was not disclosed until the order for their destruction was obeyed. Clearly, these were what is known as "money machines" and were operated by placing a coin in a slot and manipulating a lever; when the coin became a part of the device for operating the machine and if, perchance, the operator was lucky, it released other coins from the internal workings of the machine and expelled them therefrom. Under such circumstances the coins and all of them, were as much a part of the gambling device as was the lever, or dials, or slot; the machine could not be operated without their use, and the machines, as they were when seized by the sheriff, could not "pay" except for the coins therein. When, therefore, the sheriff carried away the machines as he found them, he committed no trespass—he but performed a duty imposed upon him. * * * * *so far as the taking is concerned, the money was clearly such an integral part of the machines as that the machines could not be carried away without taking the money."* (Italics ours.) To the same effect see the following cases. *Fairmount Engine Co. v. Montgomery County,* 5 A. 2d 419, (Pa.); *Rosen v. Superintendent of Police,* (Pa.) 181 A. 797; *Kenny v. Wachenfeld,* (N. J.) 184 A. 737; Pa. Quart. Sess., 2 Fay. L. J.

■ It has been held, and correctly so, that the owner or possessor of premises on which slot machines used for gambling have been installed, is not entitled to a return

of money found in such slot machines and deposited with the court upon their seizure and destruction under statutory authority. Had the legislature intended, as in Montana and possibly other States, to permit owners, operators, or individuals, to retrieve moneys deposited in gambling devices, it would have so provided. The sole purpose of the enactment of anti-gambling statutes is to prohibit gambling, not to minimize or encourage it.

While it will be conceded that the money found in the gambling devices cannot be lawfully destroyed (*Dorrell v. Clark, supra.*) it does not follow that the seizure of the money in the instant case was unlawful or that respondent was, or is, entitled to have it returned to him. Its disposition is provided for under Section 19-4802 I. C. A., which provides:

"Whenever any money shall be or shall come into the possession of any clerk of court, or other public officer authorized to receive the same, and no fund is specified by law into which such money shall be paid, or purpose to which the same shall be applied, the officer in possession of, or who may come into the possession of any money in such cases, shall pay the same to the state treasurer who shall add the same to the permanent school fund, and such money shall thereafter be and remain a part of said fund."

The rule is well established that slot machines, like other gambling devices, are not property (*Mullen v. Moseley,* 13 Idaho 457, 90 Pac. 986; 121 A. S. R. 237; 12 L. R. A. (N. S.) 394.), but contraband subject to seizure and summary destruction. Section 17-2304, I. C. A. Money found in gambling devices is likewise subject to seizure along with the devices, apparatus or instrumentalities, when the circumstances are such that it is clearly apparent that it formed an integral part of the illegal gambling operation. *Rosen v. Superintendent of Police, supra.*

The officers committed no trespass in seizing the gambling devices and the money contained therein. The money being an integral part thereof, and coming lawfully into the possession of such public officers who were authorized to receive the same under the provisions of Sec-

tion 19-4802 I. C. A., it was their duty to pay the same to the state treasurer and upon the receipt thereof, it was the duty of such treasurer to add the money so received to the permanent school fund.

The order of the trial court returning the money to respondent is reversed, and it is so ordered. Costs to appellant.

GIVENS and AILSHIE, JJ., concur.

HOLDEN, J.— (dissenting)—Sections 17-2301 and 17-2304, I. C. A., provide:

[17-2301] Every person who deals, plays or carries on, opens or causes to be opened, or who conducts, either as owner, employee, or lessee, whether for hire or not, any game of faro, monte, roulette, lansquenet, rouge et noir, rondo, Indian stick game, or any game played with cards, dice, or any other device, for money, checks, credit or any other representative of values, is guilty of a misdemeanor and is punishable by fine not less than $200, or imprisonment in the county jail not less than four months.

[17-2304] Whenever any judge or justice of the peace shall have knowledge or shall receive satisfactory information, that there is any gambling table or gambling device, adopted or devised and designed for the purpose of playing any of the games of chance prohibited in section 17-2301, within his district or county, it shall be his duty to forthwith issue his warrant, directed to the sheriff or constable, to seize and bring before him such gambling table or other device, and cause the same to be publicly destroyed, by burning or otherwise.

The majority opinion holds the money found in the seized gambling devices must be paid to the State Treasurer, who, in turn, must add it to the "Permanent School Fund," which works a complete confiscation of such money. Whether such money can be confiscated depends upon the provisions of Section 17-2304, supra. If that section authorizes the confiscation of such money, then, of course, it can be confiscated; otherwise not. The authority given by Section 17-2301, supra, is (1) to seize gambling tables and other gambling devices and (2)

"cause the same to be publicly destroyed, by burning or otherwise." When that is done all authority under the statute is exhausted. The fact that a gambling device contains money could not, of course, prevent the seizure of the device, because that would defeat the purpose of the statute; but the power to seize and to destroy gaming devices does not confer power to confiscate money found in the devices. If the legislature had intended to confer power to confiscate money found in seized gambling devices it would have so provided, as it did in legislating against lotteries, that all moneys, as well as property, used in the operation of a lottery "are forfeited to the state" (Section 17-2409, I. C. A.) It will be conceded that the sole purpose of the enactment of legislation against the operation of slot machines was "to prohibit gambling, not to minimize or encourage it," but it must likewise be conceded that the sole purpose of the enactment of legislation against the operation of lotteries was "to prohibit gambling, not to minimize or encourage it." Hence, the purpose of the legislature in enacting these statutes was necessarily identical. Nevertheless, the legislature in legislating against the operation of slot machines did not include a provision either expressly or impliedly authorizing the confiscation or forfeiture of any moneys used in the operation of the machines, whereas in the enactment of the legislation against the operation of lotteries the legislature did expressly authorize a forfeiture. The majority opinion, however, in effect, legislates the absent provision into Section 17-2304, supra. There would be just as much reason for legislating into the statute the provision authorizing the destruction of gambling devices, if the legislature had failed to include that provision, as there is to legislate a provision into the statute authorizing the confiscation of money found in the devices.

Furthermore, we are dealing in this case with a highly penal statute in that the confiscation and destruction of the device used in the commission of the crime is one of the consequences of conviction. It does not, however, provide either directly or indirectly, as above pointed

out, for the confiscation of money. In 23 Am. Jur. 601, Section 5, it is said:

"Statutes imposing forfeitures by way of punishment are subject to the general rules governing the interpretation and construction of penal statutes. Hence, statutes authorizing the forfeiting of property ordinarily used for a legal purpose [as money is] are to be strictly construed, since they are very drastic in their operation. . . . "

On page 631 of the same volume, Section 37, it is further stated:

"It is a general rule of statutory construction that penal statutes are to be strictly construed. Statutes imposing penalties are subject to this rule of strict construction. They will not be construed to include anything beyond their letter, even though within their spirit. The rule that penal laws are to be construed strictly is perhaps not much younger than construction itself. It is founded on the tenderness of the law for the rights of individuals, and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department. . . . "

In 25 R. C. L. 1081, Section 301, the rule is stated thus:

"It has long been the well settled general rule that penal statutes are subject to the rule of strict construction. They will not be construed to include anything beyond their letter even though within their spirit, and nothing can be added to them by inference or intendment. More correctly it may be said that such laws are to be expounded strictly against an offender and liberally in his favor. This can be accomplished only by giving to them a literal construction so far as they operate penally, or at most, by deducing the intention of the legislature from the words of the act. In extension of the letter of the law nothing may be assumed by implication, nor may the mischief intended to be prevented or redressed, as against the offender, be regarded in its construction. . . . "

The rule of strict construction of statutes providing for the forfeiture of property has been recognized and applied by this court in *Independent School Dist. v.*

*Collins,* 15 Idaho 535, 98 P. 857, and *Holt v. Mickelson,* 41 Idaho 694, 242 P. 977. This rule is clearly violated by the majority opinion in this case.

For the above stated reasons I dissent.

I am authorized by Mr. Justice MORGAN to say he joins in the dissent.