Germania Club, Appellee, v. City of Chicago et al.,
Appellants.

Gen. No. 43,813.

Opinion filed June 26, 1947. Re-
leased for publication July 8, 1947.

BARNET HODES, Corporation Counsel, for appellants;
J. HERZL SEGAL, Head of Appeals and Review Divi-
sion, A. A. PANTELIS and SYDNEY R. DREBIN, Assistant
Corporation Counsel, of counsel.

No appearance for appellee.

Mr. Justice Sullivan delivered the opinion of the court.

This is an action in detinue brought by plaintiff, Germania Club, against the City of Chicago and its Commissioner of Police for the return of nine slot machines and $437.08 alleged to have been contained therein when said slot machines were seized and removed from plaintiff's premises by police officers of the City of Chicago. It is undisputed that the slot machines contained $437.08 when they were opened in the office of the Commissioner of Police. The case was tried before the court without a jury and upon the trial plaintiff abandoned its claim for the return of the slot machines but demanded judgment for the money found therein by the police. Judgment for $437.08 was entered in favor of plaintiff and against the defendants. The defendants appeal. Plaintiff appellee filed no brief in this court.

Plaintiff admitted that the slot machines in question were gambling devices and as such were subject to seizure and confiscation by the police of the City of Chicago in accordance with section 2 of "An Act to prohibit the use of clock, tape, slot or other machines or devices for gambling purposes." (Par. 342, chap. 38, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 37.272].) The right of the police to seize slot machines under similar circumstances and under the authority of said act was upheld in the recent cases of *Weis v. Allman,* 325 Ill. App. 554, and *City of Chicago v. Thomson,* 393 Ill. 568.

Plaintiff having admitted that the slot machines were gambling devices subject to seizure and having consented to their destruction, the only question presented for our determination is whether it can recover the money found in the slot machines by the police officers.

Defendants contend that "the money, being sealed and contained in the slot machines, formed an integral

part of the illegal gambling operation and, therefore, was subject to seizure with the devices.''

The record discloses that all of the money found in the slot machines was placed therein by individuals who played same. Plaintiff made no attempt to prove that it had title to said money. Its position upon the trial as stated by its attorney was as follows: ''There is nothing in any law that I have ever seen that says that the City of Chicago or the State of Illinois can destroy money or divert it to corporate purposes. There is no law that says that they have got a right to put it into a corporate fund or the corporate returns, or to assess it as taxes or costs or anything else. The only thing that they can do is use it as evidence. If it is not used as evidence, it must be returned.''

It thus appears that plaintiff did not rely upon its own title to the money to establish its right to recover same but that it claimed that the money should be returned to it because the City of Chicago or the State of Illinois could not prove title thereto. It has been repeatedly held in cases of this nature that in order for a plaintiff to recover he must do so on the strength of his own title and not upon the weakness of his adversary's title.

No case in this state has been called to our attention wherein the particular question presented here has been considered and determined. However, there are numerous cases in other jurisdictions which are directly in point and hold that the owner or possessor of a slot machine which is lawfully seized by a sheriff or a police officer is not entitled to the return of the money found therein. In *Dorrell v. Clark,* 90 Mont. 585, 4 P. (2d) 712, the court said at pp. 713, 714:

''In seeking to recover the money, plaintiff brought his action in conversion, alleging that the sheriff, without right or authority, seized and carried away and detains property to the 'immediate possession' of which plaintiff was entitled. In such an action

plaintiff must recover, if at all, upon the strength of his own title and not upon the weakness of his adversary (*Kinsman v. Stanhope,* 50 Mont. 41, 144 P. 1083, L. R. A. 1916C, 443; *Shipler v. Potomac Copper Co.,* 69 Mont. 86, 220 P. 1097), and, without regard to the nature of the action, plaintiff must establish his right to the money in order to secure its delivery to him.

''It is first apparent that the sheriff did not wrongfully seize the money in question. The statute authorized him to seize the slot machines in operation. It is clear from the record and from the nature of the devices seized that the money was within the mechanism of the slot machines and was not disclosed until the order for their destruction was obeyed. Clearly, these were what is known as 'money machines' and were operated by placing a coin in a slot and manipulating a lever; when the coin became a part of the device for operating the machine and if, perchance, the operator was lucky, it released other coins from the internal .workings of the machine and expelled them therefrom. Under such circumstances the coins, and all of them, were as much a part of the gambling device as was the lever, or dials, or slot; the machine could not be operated without their use, and the machines, as they were when seized by the sheriff, could not 'pay' except for the coins therein. When, therefore, the sheriff carried away the machines as he found them, he committed no trespass—he but performed a duty imposed upon him by law— . . . Whether or not the money here considered was 'subject to disposition as a part of the gambling devices' we need not here determine; the trial court did not dispose of it as such, but, in so far as the taking is concerned, the money was clearly such an integral part of the machines as that the machines could not be carried away without taking the money. . . . However, whatever may or may not be done with the money in the custody of the court, the power of our courts, either at law or in equity, cannot be

invoked in aid of one showing a violation of the law, to complete the illegal transaction and secure to the violator the fruits of his outlawry.''

In *Rosen v. Superintendent of Police LeStrange,* 120 Pa. 59, 181 Atl. 797, the court said at pp. 798, 799:

''Money may, nevertheless, be subject to seizure, along with contraband gambling devices, apparatus, or instrumentalities (*Com. v. Sinn,* 92 Pa. Super. 482, 484; *Com. v. Kaiser,* 80 Pa. Super. 26, 28) when the circumstances are such that it is clearly apparent that it formed an integral part of the illegal gambling operation, and, being commingled with other such money, had not, previous to the seizure, been reclaimed and taken back into his own possession by the player, nor been received and reduced to the exclusive possession and ownership of the winner, or owner of the gambling device, or proprietor of the gambling establishment. Thus money found in a gambling slot machine, when seized, may be held with the machine and be confiscated by the commonwealth; for while it had passed out of the ownership of the players, who inserted it in the machine, it had not been reduced to the possession and ownership of the proprietor; he does not become the owner of the money while it is contained in a receptacle within the illegal and contraband gambling machine.''

(To the same effect are *State v. McNichols,* 63 Idaho 100, 117 P. (2d) 468, and *State v. Klozar,* 46 N. E. (2d) 474 (Ohio App.).)

The foregoing authorities are squarely applicable to the situation presented here. Since the money found in the slot machines involved in the instant case formed an integral part of the illegal gambling operation of such machines and since it never came into the possession of plaintiff, the latter did not become the owner of said money and it was therefore subject to seizure and confiscation along with the contraband slot machines,

It is clear that the trial court erred in entering judgment in favor of the plaintiff. The judgment of the Municipal Court of Chicago is reversed and judgment is entered here in favor of defendants and against plaintiff.

*Judgment reversed and judgment here.*

FRIEND, P. J., and SCANLAN, J., concur.