[S. F. No. 18026.   In Bank.   June 29, 1951.]

LEE ON et al., Appellants, v. JAMES LONG, Individually and as Sheriff, etc., et al., Respondents.

Deasy & Dodge and Philip L. Evans for Appellants.

Fred N. Howser and Edmund G. Brown, Attorneys General, Clarence A. Linn, Deputy Attorney General, Francis W. Collins, District Attorney (Contra Costa), and Thomas F. McBride, Deputy District Attorney, for Respondents.

J. F. Coakley, District Attorney (Alameda), R. Robert Hunter, Assistant District Attorney, Richard H. Klippert, Deputy District Attorney, William E. Simpson, District Attorney (Los Angeles), J. Francis O'Shea, District Attorney (Sacramento), J. D. Keller, District Attorney (San Diego), Thomas C. Lynch, District Attorney (San Francisco), Chester Watson, District Attorney (San Joaquin), Louis De Matteis, District Attorney (San Mateo), and N. J. Menard, District Attorney (Santa Clara), as Amici Curiae on behalf of Respondents.

SPENCE, J.—The question to be determined is whether the trial court erred in its judgment denying plaintiffs the right to recover money seized while in use in gambling games, which games were being conducted in violation of law. Consistent with the settled principle that the courts will not lend assistance to persons whose claim for relief rests on an illegal transaction, it is our conclusion that plaintiffs cannot prevail.

In August, 1945, plaintiffs were arrested in a gambling raid made on certain premises in El Cerrito. Thereafter plaintiffs were charged with the violation of section 330 of the Penal Code (gaming); and upon arraignment, they pleaded guilty to the charges and paid the fines imposed.

In the course of the raid, the sheriff and his deputies seized from the tables at which plaintiffs were seated certain dice, dominoes, playing cards, lottery tickets, and money in the amount of $6,248.35. The county of Contra Costa filed a petition in the superior court praying for an order authorizing destruction of the gambling paraphernalia and forfeiture of the money. Plaintiffs in turn brought suit against the sheriff, Long, and the district attorney, Collins, for the return of the money. The two cases were tried upon the same evidence. The court ordered confiscation of the gambling paraphernalia but with respect to the money, it denied both the county's petition for forfeiture and also plaintiffs' prayer for its return.

In the disposition of plaintiffs' action, the trial court found, in accord with the undisputed testimony of the sheriff, defendant Long, that the money was seized from gambling tables where it was "in use in gambling games"; that plaintiffs had pleaded guilty to the violation of section 330 of the Penal Code and each had paid a fine of $250; that the money had been deposited by defendant Long with the county treasurer, and that plaintiffs had failed to file a claim "against defendants in their official capacity . . . pursuant to the requirements of Section 29704 of the Government Code." Upon these findings, the court concluded that plaintiffs' claim was barred by their failure to comply with said section 29704; that the money "at the time of [its] seizure" was being "used in violation of the [state] gaming laws"; and that "the law will not lend its support to a claim founded on its own violation." From the adverse judgment accordingly entered, plaintiffs have appealed.

The principal question on this appeal, the answer to which appears to be determinative, is whether plaintiffs, despite their claim of ownership and right to possession of the money in question, are nevertheless barred from its recovery by the trial court's findings that the money was "at the time of its seizure in use in gambling games," which games were being conducted in violation of law. Plaintiffs do not contest the propriety of these findings, but they argue that the trial court's refusal to return the money to them is contrary to the statu-

tory provisions limiting the scope of forfeitures. To this point, plaintiffs cite section 2604 of the Penal Code, declaring that "No conviction of any person for a crime works any forfeiture of any property, except in cases' in which a forfeiture is expressly imposed by law." The Legislature has provided in two instances for the forfeiture of money used in gambling, neither of which is applicable here: Penal Code, § 335a, having to do with gambling devices other than those here involved; and section 325, dealing with lottery activities, as to which the seized money was in nowise connected under the evidence or the court's findings. ■ Consistent with the general rule governing the construction of statutes involving forfeitures (12 Cal.Jur. § 3, pp. 633-634), the trial court properly recognized the limits of its express statutory authority and denied the county's petition for forfeiture "as far as the money [was] concerned." (*Cf. Chapman* v. *Aggeler,* 47 Cal.App.2d 848, 860-861 [119 P.2d 204].) However, the present case on appeal does not concern the law of forfeitures, but rather relates to the question of whether plaintiffs, admittedly engaged in illegal gambling activities at the time of the raid and their arrest, are in a position to assert their ownership and right to possession of the money that was then in actual use in such activities, and to enlist the aid of the court in seeking to have it restored to them.

■ "No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out; nor can he set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim." (17 C.J.S. § 272, p. 656.-) ■ Nor is this established rule limited in its application to parties to the illegal transaction as distinguished from an attempt to set up a claim against a third party based on the law's violation. (*Schur* v. *Johnson,* 2 Cal.App.2d 680, 683 [38 P.2d 844]; *Asher* v. *Johnson,* 26 Cal.App.2d 403, 413 [79 P.2d 457].) As was said in the Schur case at pages 683-684, "the test of its [the rule's] application is whether the plaintiff can establish his case otherwise than through the medium of an illegal transaction to which he himself is a party." Likewise illustrative of the courts' attitude towards the enforcement of a demand "connected with an illegal transaction" is the statement in the Asher case at page 416: "If the plaintiff cannot open his case without showing that he has broken the law, the court will not assist him, whatever his claim of justice may be upon the defendant." In such cases,

the illegal nature of the transaction creates a "disability in [the] plaintiff." (17 C.J.S. § 272, p. 659.)

■ Here it is manifest that plaintiffs could not, and did not prove their right to possession of the seized money without disclosing that it was in use in their illegal gambling activities at the time of the raid and their arrest in the gambling establishment. Moreover, plaintiffs pleaded guilty to the violation of the gaming law as charged following their arrest and paid the fines imposed. . Shall the courts then lend their aid to enable persons such as plaintiffs, who have committed a criminal offense, to recover the money which was in actual use in the perpetration thereof? Such question must be answered in the negative under the principles enunciated in *Schur* v. *Johnson, supra,* 2 Cal.App.2d 680, and *Asher* v. *Johnson, supra,* 26 Cal.App.2d 403, where the operators of illegal tango establishments sought to recover sales taxes which they paid to the state under protest that such levies had been improperly made on their gambling games. In the last cited cases, plaintiffs were denied recovery on the ground that they had to rely on their unlawful business to establish their right to recover the money wrongfully collected. In so holding, the court in the Asher case pertinently said at page 408: "We cannot afford to temporize on principles which vitally affect the public welfare." As involving fundamentally similar legal considerations, the court there cited and quoted at length (26 Cal.App.2d 410-411) from the leading case of *Dorrell* v. *Clark,* 90 Mont. 585 [4 P.2d 712, 79 A.L.R. 1000] holding that the owner or possessor of a slot machine, which is lawfully seized by a sheriff or a police officer, is not entitled to the return of the money found therein. The same general reasoning has been followed by courts in other jurisdictions in refusing to restore to alleged owners money earmarked or segregated as part of gambling operations and lawfully seized along with gambling paraphernalia in the course of a gambling raid. (*Hofferman* v. *Simmons,* 290 N.Y. 449 [49 N.E.2d 523, 527]; *Germania Club* v. *City of Chicago,* 332 Ill.App. 112 [74 N.E.2d 29, 30]; *State* v. *McNichols,* 63 Idaho 100 [117 P.2d 468, 469-470]; *State* v. *Johnson,* 52 N.M. 229 [195 P.2d 1017, 1020]; see, also, *Fairmount Engine Co.* v. *Montgomery Co.,* 135 Pa.Super. 367 [5 A.2d 419, 420-421]; *Krug* v. *Board of Chosen Freeholders,* 3 N.J.Super. 22 [65 A.2d 542, 544].)

■ Equally applicable here as in the Asher case is the fundamental legal principle of the Dorrell decision in precluding plaintiffs, "admitting the violation of the law," which

they must disclose as "the groundwork of [their] claim," from recovery of the money which was in actual use in their illegal gambling activities. (*Dorrell* v. *Clark, supra,* 90 Mont. 585 [4 P.2d 712, 714].) It is not a question of the ultimate disposition of the seized money, but rather application of a "salutary rule invoked to uphold law and order." (*Asher* v. *Johnson, supra,* 26 Cal.App.2d 403, 414.) This principle of the law, grounded on public policy, is not affected by the independent considerations entering into the statutory declaration limiting forfeitures to those "expressly imposed by law." (Pen. Code, § 2604.) ▮ As pointed out in the Dorrell case (4 P.2d 713) in an action for conversion, "the plaintiff must recover, if at all, upon the strength of his own title and not upon the weakness of his adversary . . ." (See, also, 22 Cal.Jur. § 42, p. 167.) Under these circumstances, the trial court did not undertake to declare a forfeiture but properly held that plaintiffs were not entitled to prevail in their suit for recovery of the seized gambling funds. (See *Dorrell* v. *Clark, supra,* 90 Mont. 585 [4 P.2d 712, 714].)

In view of the conclusion reached on the question heretofore discussed, it is unnecessary to determine whether plaintiffs would be barred in any event because of their failure to present a claim in the manner provided in section 29704 of the Government Code (formerly Pol. Code, § 4075).

The judgment is affirmed.

Gibson, C. J., Shenk, J., and Edmonds, J., concurred.

CARTER, J.—I dissent.

The majority opinion holds, contrary to the statutes, that a person convicted of gambling (Pen. Code, § 330) may be subjected to two penalties, fine or imprisonment and the loss of the money that was used in the gambling enterprise and seized by the arresting officers. It arrives at that astonishing conclusion by equally astonishing reasoning. It concedes that the state *could not declare a forfeiture of the money*—that it is not contraband. Yet it concludes that if the state does seize it and is *unlawfully* holding it, the owners cannot recover it. If the result of that conclusion is not confiscation or forfeiture, then the law is indeed an "ass," for it forsakes logic and reason for sophistry—a mere play on words resulting in a legal paradox—the state cannot acquire title—the owner cannot recover possession from the state.

The majority announces the broad rule that where any property is used in the commission of any unlawful act and the officers seize it while making an arrest (I assume it was lawfully seized and could be held as evidence for the trial), then the state may retain it although it cannot declare it forfeited. The implications of that rule are far reaching and inimical to our concept of justice. It may even go so far that any time a traffic officer has the notion, he may seize a car which he claims is being used in violation of any of the innumerable traffic laws. A pertinent illustration is suggested by what is done under the ordinances which authorize the towing away of cars when parked in prohibited areas. If the city should decide that it would like to use those cars for carrying on its business, it may do so. According to the majority opinion they could not·be confiscated but the owners could not recover them from the city. The same would be true of a horse run in an illegal race.

The statutes in this state leave no room for doubt that property used in the commission of an unlawful act cannot be confiscated by the state unless the statute *expressly* so provides. It is conceded by the majority that there is no statute authorizing or permitting the forfeiture of money used in a gambling game. The Penal Code provides: "No conviction of any person for a crime works *any forfeiture of any property,* except in cases in which a forfeiture is *expressly* imposed by law; . . ." (Pen. Code, § 2604.) (Italics added.) A conviction of gambling cannot, therefore, "work" a forfeiture; that is, the *law* cannot "work" a forfeiture. But this court, by refusing to allow recovery of the money seized, puts itself above the law and "works" a forfeiture. This section has been applied as not defeating an action to protect a homestead on property used for prostitution. In *Harlan* v. *Schulze,* 7 Cal.App. 287, 294-295 [94 P. 379], the court stated: "If residing in a house of prostitution is a crime, as suggested by respondent in view of section 315 of the Penal Code, we must not overlook section 677 [the predecessor of ̓§ 2604] of the same code, which declares: 'No conviction of any person for crime works any forfeiture of any property, except in cases in which a forfeiture is expressly imposed by law; and all forfeitures to the people of this state, in the nature of a deodand, or where any person shall flee from justice, are abolished.'" In *Chapman* v. *Aggeler,* 47 Cal.App.2d 848 [119 P.2d 204], the owner of slot machines seized by the police in a raid, brought an action to recover them. Losing in the trial

court, the owner appealed. The appellate court reversed and directed the trial court to order return of the machines. The court proceeded in part on the ground that there was no finding that the machines were used for gambling, *but also,* said (pp. 860-861): ''We first call attention to the fact that this appellant was convicted of no crime, and then cite the restrictive *rule which obtains even when a defendant is found guilty.* It is found in section 677 of the Penal Code providing that 'No conviction of any person for crime works any forfeiture of any property, except in cases in which a forfeiture is expressly imposed by law. . . .' In all of chapter X of the Penal Code, which is entitled 'Gaming,' and where section 330a appears, there was, prior to this year, no provision for forfeiture. This can hardly be considered accidental since the preceding chapter dealing with lotteries contains a provision for forfeiture in section 325, an instance where forfeiture is 'expressly imposed by law.' But even there, in order to make forfeiture effective, an action must be brought or an information filed 'by the attorney-general, or by any district attorney, in the name of the state.' And by this procedure no lottery or gambling machine may be taken by the state, but only the 'moneys and property offered for sale or distribution. . . .' In short, there is no statute in California that has been called to our attention or that we have been able to find that vests in the court authority to declare a forfeiture in a case such as we are considering. In the absence of express statutory authority, the order requiring the destruction of the property in question is without legal sanction and void.

''It follows from this that the portion of the judgment, by which the court ordered the seized property to be destroyed and a record entry made of its destruction, cannot be sustained.

''Judgment reversed, without costs to either party, and the cause remanded *with instructions that judgment be entered for plaintiff entitling him to the return, forthwith, of the seized property.''* (Italics added.) That case stands, therefore, for the proposition that if property, seized while being used unlawfully, may not be confiscated by the state, the owner may recover it.

Furthermore, it should be observed that the Legislature has provided that the *maximum* penalty for the violation of section 330 of the Penal Code, of which plaintiffs were convicted, is a *$500* fine. (Pen. Code, § 330.) Yet this court, by refusing to allow recovery of the money, levies a fine of over $6,000.

It has been held that the owner may recover money when it is used in gaming and seized by the state where there is no statute providing for a forfeiture. (*Chappell* v. *Stapleton,* 58 Ga.App. 138 [198 S.E. 109]; *Kearney* v. *Webb,* 278 Ill. 17 [115 N.E. 844]; 23 Minn.L.Rev. 976.) *Schur* v. *Johnson,* 2 Cal.App.2d 680 [38 P.2d 844] and *Asher* v. *Johnson,* 26 Cal. App.2d 403 [79 P.2d 457], relied upon by the majority are not in point, for they did not involve or consider the lack of right in the state to declare a forfeiture unless expressly authorized by statute. (Pen. Code, § 2604, *supra.*) Moreover those cases ignored the rule, later discussed, that a stranger to the gambling game—the state here—cannot rely upon the illegality of the use being made of the money.

The majority opinion rests its conclusion in part upon the proposition that a third party, the state here, may raise the claim of the illegality of the transaction between the participants in the game and cite *Schur* v. *Johnson, supra,* and *Asher* v. *Johnson, supra.* That is not the law in California or elsewhere. For illustration, it is said in *Kyne* v. *Kyne,* 16 Cal.2d 436, 440 [106 P.2d 620]: "For example, a bank will not be permitted to invoke the illegality of a contract between two individuals and thereby retain money which was the fruit of the illegal transaction and which was deposited by one of them for the account of the other." (See cases collected 50 A.L.R. 293.) Here, the state was not a party to the unlawful game and it can make no claim to the money through the participants. It is in no different position than a thief who seized the money from the table, and, as said in 29 California Law Review 422, in commenting on the Schur and Asher cases, *supra:* "It is difficult to see how the state's wrongful collection of taxes can in any way be said to make the state claim through the tango proprietors. The state would be just as much a stranger to the illegal business as would a thief, or as was the bank in the case put by the court, *supra,* note 18. The court's refusal to aid the parties to recover their money seems to be no more than a judicially created and imposed penalty for carrying on the unlawful business." As we have seen, the Legislature has fixed the penalty for gambling, and stated that there could be no forfeiture. This court, therefore, has no authority to increase it or impose a forfeiture. To do so is to usurp the power of the Legislature in violation of the Constitution (art. III, § 1).

Closely related to the last discussed proposition is the majority's conclusion that plaintiffs could not recover if they

had to rely upon the illegal gambling transaction to prevail. It is conceded that if they do not so have to place their reliance on such transaction they may prevail, and that is the law. (*Guerin* v. *Kirst,* 33 Cal.2d 402, 410 [202 P.2d 10, 7 A.L.R.2d 922].) All they would need to show is that it was their money that was on the table and the sheriff seized it and that he or one of the defendants still retains it. For what purpose the money was there or what use was being made of it would be wholly immaterial. It is no different than the illustration given in *Kyne* v. *Kyne,* 16 Cal.2d 436, 440, *supra,* of the bank holding funds involved in an illegal transaction in which it was not a participant.

The majority opinion speaks of public policy as the basis for its conclusion. The question arises: Who is supreme in that field, the Legislature or the courts? The Legislature, by failing to provide for a forfeiture, and further stating, that when it does not so provide, there shall be none (Pen. Code, § 2604, *supra*), has unequivocally announced the policy that persons engaged in gambling shall not be penalized by losing the money used. The majority opinion *nullifies* this policy, for it will not permit the owners of the money to recover it. To say that that does not amount to a forfeiture is to deny the obvious. It cannot be denied that by such a holding the owners lose their property. The state has it and intends to keep it. It cannot obtain title to it by forfeiture proceedings, but no doubt it will eventually make use of it. It cannot be left in limbo. It was said by Judge Augustus N. Hand, that recovery of property involved in an illegal transaction will *not* be barred "where the res sought to be recovered is held in escrow under what is in effect an order of interpleader so that a refusal to act in favor of the complainant will amount to affirmative action in favor of the other party." (*Judson* v. *Buckley,* 130 F.2d 174, 180.) That is precisely the situation here. The state does not have title and cannot have it declared forfeited. It thus has mere possession, such as in escrow, and to deny recovery by the owners amounts to an "affirmative action in favor" of the state, that is, forfeiture. *No one can prevent the state from using it as the only interested parties are the owners* and they can do nothing. Hence it follows that the state may and will appropriate it to its own use with impunity and a forfeiture is effected in violation of the express statutory provision to the contrary—another legal paradox.

I would therefore reverse the judgment.

SCHAUER, J., Dissenting.

I concur in the conclusion reached by Justice Carter. This is not a case in which relief tenably can be denied upon the ground that title is claimed through an illegal transaction. The claimants' title here does not appear to have been derived from gaming; on the contrary, it is asserted and proved to exist entirely independent of the gaming.

The action of this court does not strike down but, rather, puts a premium on lawlessness. It accomplishes that which could properly be ordained, if at all, only on a forfeiture statute clear and unmistakable in terms. There is no such statute; the decision, therefore, invades the province of the Legislature.

The mischievous results which may follow are legion. Among other things it purports to give judicial protection to hijacking. Anyone may appropriate any object used directly or indirectly in an unlawful activity. A hostess entertaining at bridge or gin rummy or similar diversion may well find her furniture (card tables, chairs, etc.) appropriated and removed from her premises; she cannot recover them. A player may find his eyeglasses taken from him; he cannot recover them. It could not be burglary to uninvitedly and surreptitiously enter a private home for the purpose of appropriating such objects.

All of this is enacted by this court to no worthy end. The holding will not have the slightest deterrent effect on organized or professional gambling; it can be used to embarrass and injure inoffensive and substantial citizens in their homes.

The judgment should be reversed.

TRAYNOR, J., Dissenting.

I concur in the conclusion reached by Justices Carter and Schauer.

Appellants' petition for a rehearing was denied July 26, 1951. Carter, J., Traynor, J., and Schauer, J., voted for a rehearing.