In re Noble James BARRET et al.

Appeal of Louis Herbert HOLLINGSWORTH and Claude Lee Simpkins.

No. 72–1111.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1973.

. Decided April 3, 1973.

---

Gerald G. Fuchs, Evansville, Ind., for appellants.

Stanley B. Miller, U. S. Atty., Richard L. Darst, Asst. U. S. Atty., Indianapolis, Ind., for appellee.

Before CASTLE, Senior Circuit Judge, and KILEY and PELL, Circuit Judges.

PER CURIAM.

Appellants Louis Herbert Hollingsworth and Claude Lee Simpkins appeal from the denial of their petitions for the return of $5133 which FBI agents allegedly seized from each of them during a raid on a gambling house in Evansville, Indiana, where they worked.

FBI agents raided the establishment on August 9, 1969 and seized gambling devices and the money they found on the gambling tables, at a cashier's window, and in the house safe. After appellants invoked the fifth amendment at grand jury hearings, the government gave them the following grant of immunity pursuant to 18 U.S.C. § 2514:

> None of the respondents shall be prosecuted or subjected to any pen-

alty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding against him in any court, Federal or State; . . . .

Testifying under this immunity, appellants told about the operations of the gambling house at a trial which led to the convictions of Charles Lee, Jr. and Ray Metcalf, who allegedly operated the house.

On March 9, 1970, appellants petitioned for the return of their share of the money which the FBI agents seized during the raid. After an evidentiary hearing, the district court found that appellants had not proven their ownership of the money they claimed, and that any attempt to prove ownership would result in reliance upon an illegal gambling contract which the court could not enforce. Accordingly, the court denied the petitions. On this appeal Hollingsworth and Simpkins argue that any withholding of their money amounts to a forfeiture which the language of the grant of immunity to them clearly forbids. They deny that an illegal gambling agreement is involved, and contend that they are merely trying to get their money back from the government.

Unless the appellants can prove that they had a legal title or right to the money they claim on this appeal, no question arises whether the government has caused a *de facto* forfeiture of it.

The record does not contain sufficient evidence that the money claimed by the appellants was actually "theirs." The record clearly indicates that appellants did not have possession of the money at the time the FBI agents raided the gambling establishment.[1] Nor had steps been take to identify the money as

1. "The presumption of the law is, that the party in possession of personal property is the owner of the same; and so, also, as men usually own the personal property they possess, proof of possession is presumptive proof of ownership." Wiseman v. Lynn, 39 Ind. 250, 259 (1872).

belonging to the appellants. Appellant Hollingsworth testified that, at the time of the raid, his and Simpkins' share of the money was or should have been in the possession of the house, and that most of their money was usually kept in the house safe with other money. Although Hollingsworth claimed that he and Simpkins turned in their money with instructions that their shares be kept separate and identifiable, the evidence indicates that no such segregation was effected.[2] Hollingsworth also admitted that he and Simpkins did not have access to the safe.

In the absence of any presumptive evidence of ownership or title to the two shares of $5133 which the appellants claim, a court must rely upon other evidence upon which the appellants seek to prove their right to the money. The appellants argue that their right to the money which was in the possession of the house arises from an oral contract among themselves and Ray Metcalf whereby each would realize a third of the proceeds of the blackjack game. Hollingsworth testified that the bankroll of the game had grown to about $15,400, and that accordingly his and Simpkins' shares amounted to $5133 each. But the public policy of Indiana against gambling prevents this court from accepting such an argument as a basis for dividing the commingled money. Indiana has declared that the title to money or property won at the gambling table never vests in the winner.[3] Ervin v. State, ex rel. Walley, 150 Ind. 332, 336, 48 N.E. 249, 250 (1897). Therefore, regardless of their contract, appellants never gained title to any of the blackjack winnings and they cannot rely on any title to the money in this action.[4] Indiana public policy also forbids any recognition of a contract for the division of gambling proceeds. Auman v. Fabiano, 132 F.Supp. 353 (N.D.Ind.1955), *see also*, Dorrell v. Clark, 90 Mont. 585, 4 P.2d 712 (1931). The fact that the federal government holds the money that is owed to the victorious party under the contract does not alter the policy against using the courts to further an illegal enterprise.

We conclude that appellants never actually gained title to the money won at the blackjack table which was commingled with other money belonging to the house, and that even if they had some title, a court will not enforce an illegal contract as a means of separating out the one-third shares claimed by the appellants. Plaintiffs have not suffered any *de facto* forfeiture of their money because they never had title to it originally.[5] As the district court correctly

---

2. Appellants attempted at oral argument to establish that the $15,400 or so purportedly found in an envelope in the safe seized during the raid was blackjack money, of which one-third belonged to each appellant. Unfortunately, Hollingsworth's testimony at the evidentiary hearing does not sustain such an argument, for his recollections about the existence of an envelope and the exact monetary amount of its contents were vague and inconsistent. Even if the envelope contained the exact amount of the blackjack winnings, reference to some agreement for the division of the money would be necessary, for the envelope bore no instructions concerning whose money was enclosed.

3. *See* Ind.Code § 35–25–2–2 (1971) which allows a loser of a gambling transaction to sue to recover his money, and Ind.Code § 35–25–2–4 (1971) which allows a prose-

cuting attorney to recover the money for the family of the loser or for the public schools if the loser does not seek recovery.

4. We are also cognizant of Indiana decisions allowing a person who has turned over money to a stakeholder to recover this money before it has been wagered or delivered to a winner. *See*, e. g., Frybarger v. Simpson, 11 Ind. 59, 61 (1858). Appellants did not attempt to collect at least their original contribution to the blackjack game on this theory, and did not submit evidence sufficient to support recovery under the thesis that the house was a stakeholder. *See* Kearney v. Webb, 278 Ill. 17, 115 N.E. 844 (1917).

5. As appellants admitted at oral argument, the negotiations leading to the grant of immunity did not determine the disposition of the appellants' share of the blackjack

observed: "Immunity does not vest in the witness rights which he did not possess prior to the grant of immunity."

The judgment of the district court is affirmed.[6]

Affirmed.

---

money. Counsel representing appellants would have done well to attempt to avoid the implications of earlier decisions which had held that forfeiture occurs at the time the property is used illegally, especially since the grant of immunity protected against only future forfeitures. United States v. Stowell, 133 U.S. 1, 16–17, 10 S.Ct. 244, 33 L.Ed. 555 (1889).

6. This decision merely leaves the parties involved in the situation in which they have placed themselves. Auman v.

Fabiano, *supra*, 132 F.Supp. at 353. It will still be incumbent upon the government to bring forfeiture proceedings against the money seized at the gambling establishment within the statute of limitations and to return this money if the forfeiture action fails pursuant to the holding of United States v. United States Coin and Currency, 401 U.S. 715, 722 n. 10, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), and if Indiana authorities attempt no action to obtain the money under the law of their state.